**Ver Dean HYDE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 88–109.**

Supreme Court of Wyoming.

Feb. 17, 1989.

Leonard D. Munker, State Public Defender, Steven E. Weerts, Sr. Asst. Public Defender, and Norman A. Newlon, Legal Intern, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Sylvia Lee Hackl, Sr. Asst. Atty. Gen., for appellee.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and BROWN, Ret. J.

BROWN, Justice, Retired.

A search of appellant's premises, authorized by a search warrant, resulted in the seizure of numerous growing marijuana plants, dried marijuana, scales and other paraphernalia. Appellant's motions to suppress evidence seized were denied and he was convicted by a jury of possession of a controlled substance with intent to deliver. Appellant was sentenced to a penitentiary term, fined, and assessed $50 for the Crime Victim's Compensation Account.

The issues on appeal are:

## I

Whether the search of the appellant's house and garage was in violation of the United States and Wyoming Constitutions.

## II

Whether the trial court's surcharge against the appellant for contribution to the Crime Victim's Compensation Account violates the appellant's rights under the United States and Wyoming Constitutions and whether the Crime Victim's Compensation Act violates the Wyoming Constitution.

We will affirm.

Appellant Ver Dean Hyde and one Barbara Clark commenced living together in 1984. In late 1986, appellant and Ms. Clark were the architects and builders of a garage located about fifty yards from the former's house. Initially appellant may have intended to use the second story of the garage for woodworking, but he soon became interested in horticulture. He decided to use this space for a greenhouse to develop a specific variety of marijuana plant. He experimented with different varieties.

In the early months of 1987, Barbara Clark and Kathy Jorgensen became acquainted. Ms. Clark and Ms. Jorgensen traded marijuana and the former became Ms. Jorgensen's supplier. On April 14, 1987, Ms. Clark delivered a half-ounce of marijuana to Ms. Jorgensen, who in turn sold it to Georgia Rollins, a friend of her daughter, Suni. Georgia Rollins was, in fact, an undercover name for Veronica Davison, who had enrolled in Star Valley High School as an undercover narcotics agent to assist the Lincoln County Sheriff's Office. On that day, Ms. Davison (a/k/a Rollins) was wearing a body microphone, and her conversations with the Jorgensens were monitored by Detective Ron Hartley.

After observing the events of April 14, 1987, and the controlled buy, Detective Hartley obtained a search warrant for appellant's residence. When the warrant was executed the next day, the officers found nine mature marijuana plants over four feet in height, along with several bags and boxes of marijuana, scales and other paraphernalia in appellant's house. The search of the garage yielded an additional 128 marijuana plants, dried marijuana, growing lights, and a cement mixer containing dirt and growing mixture.

Appellant was charged with possession of a controlled substance with intent to deliver. Before trial, appellant moved to suppress all evidence seized during the April 15, 1987, search of his house and garage. He challenged the sufficiency of the warrant and its execution. During the suppression hearing held on June 23, 1987, defense counsel argued that false statements were contained in the affidavit. His first contention was that the affidavit erroneously stated that "marijuana and other controlled substances" were believed to be present on the property.

Counsel also focused on an incorrect reference to Barbara Clark as Barbara Hyde, and argued that the statement, "[S]he says she can't get back to me until Dean gets home from work," was false because there was no evidence that "Dean" referred to Ver Dean Hyde. Finally, counsel contended that the only probable cause apparent from the affidavit was probable cause to search Barbara Clark's residence, not appellant's, and that, in any event, the warrant did not include the garage. In support of his contention that the garage was entirely separate from the house, defense counsel called as a witness an investigator, retained by the defense, who had examined

appellant's property and taken photographs of it. The trial court reserved a ruling on the suppression motion.

On the morning of trial, defense counsel renewed the suppression motion. The trial court heard additional testimony from (1) the officer who prepared the affidavit, (2) Barbara Clark, (3) appellant, and listened to the arguments of counsel. The trial court ruled that the affidavit was sufficient and that the warrant was properly issued and executed. The motion to suppress was then denied and the trial court's ruling was embodied in a written order filed on January 26, 1988. The order in part stated:

The Defendant, Ver Dean Hyde, filed a motion to suppress evidence found in the search of the Ver Dean Hyde residence on April 15, 1987. This court denied the motion insofar as it pertained to the search of the house but reserved a ruling on the search of the garage. Prior to trial, on January 11, 1988, the Defendant again raised the issue of the search in a motion in limine. The court having heard the testimony and having considered all exhibits produced in the hearing, finds:

1. That the affidavit for a search warrant contained sufficient statements of fact to support the finding of probable cause to issue a search warrant to search for controlled substances on the premises known as the residence of Ver Dean Hyde.

2. That the officer requesting the warrant acted in good faith and did not include a statement of fact in the affidavit known to him to be materially false nor did he omit a statement which would have led the commissioner issuing the warrant to conclude that no probable cause existed.

3. That the garage which was searched was approximately 50 yards from the Ver Dean Hyde house; was enclosed with the house by a fence on the east and south, a country road on the north and an open field to the west; was not separated from the house by a fence or other feature which would indicate that it was separate from the residence. There was evidence of use in conjunction with the house, a trail or path led from the house to the garage, there were two vehicles parked between the house and the garage.

The foregoing facts in addition to other facts developed at the hearing on the motion in limine leads the court to find as a matter of fact that the garage was within the curtilage of the residence of Ver Dean Hyde. The garage therefore did not need to be named specifically in the warrant and affidavits and the search of the garage as part of the premises known as the Ver Dean Hyde residence was proper.

IT IS THEREFORE ORDERED that the motion to suppress and the motion in limine seeking to suppress the evidence found in the search of the Defendant's house and garage are hereby denied.

Appellant was convicted of possession of a controlled substance with intent to deliver in violation of W.S. 35–7–1031(a)(ii) (Cum.Supp.1987).

## I

On appeal, appellant attacks the affidavit in support of a search warrant and challenges the sufficiency of the search warrant and the scope of the search. The trial court's findings on the motion to suppress "are binding on this court unless clearly erroneous." *Neilson v. State*, 599 P.2d 1326, 1330 (Wyo.1979), cert. denied 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980).

The basic principles governing search warrants have been summarized by this court in *Bonsness v. State*, 672 P.2d 1291, 1292–93 (Wyo.1983) (footnotes omitted):

In order to issue a proper search warrant, a magistrate must have a "substantial basis" for concluding that probable cause exists. A magistrate's determination of probable cause should be paid great deference. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697, 78 A.L.R.2d 233 (1960).

The Wyoming Constitution requires that a search warrant be issued only upon a showing of probable cause. Probable cause must be supported by an

affidavit which supplies the issuing officer with sufficient information to make an independent judgment that probable cause exists for the warrant. *Ostrowski v. State*, Wyo., 665 P.2d 471 (1983). The affidavit in support of the warrant, therefore, must include more than bare conclusions of the affiant. Facts which lead the affiant to believe that a warrant is justified must be presented in the affidavit. The test for determining the existence of probable cause is whether a factual situation is sufficient to warrant a reasonably cautious or prudent man to believe that a crime was being committed or that one had been committed. *Smith v. State*, Wyo., 557 P.2d 130 (1976). This test requires that the issuing officer weigh and consider all of the circumstances surrounding the issuance of a warrant.

In reviewing the sufficiency of the affidavit, we first note that "[t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667, 682 (1978). One who challenges an affidavit must allege *"deliberate* falsehood" or *"reckless* disregard for the truth." *Id.* at 171, 98 S.Ct. at 2684 (emphasis added). See also *Williams v. State*, 655 P.2d 273, 277 (Wyo.1982). Appellant neither makes such allegations nor supports them with the requisite offer of proof.

■ Furthermore, this court adopted the " 'totality of the circumstances' " test as the appropriate standard by which to review the sufficiency of a probable cause determination. *Bonsness*, 672 P.2d at 1293, citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). When that test is applied to the affidavit in the case here, it is evident that the court commissioner acted properly in issuing the warrant. The affidavit indicates: (1) an undercover operation was underway; (2) the undercover agent was being observed and monitored by police officers and was wearing a body microphone; (3) the undercover agent went to the Jorgensen residence and made arrangements to purchase marijuana; (4) the Jorgensens, in their vehicle, drove out to appellant's residence; (5) Suni Jorgensen then telephoned the undercover agent and said that she could not get any marijuana but it would be delivered later that day; (6) appellant's vehicle was then seen at the Jorgensen residence; and (7) the undercover agent returned to the Jorgensen home and purchased marijuana.[1]

1. The affidavit of Ron Hartley states, in pertinent part:

I, Ron Hartley, being of lawful age and being first duly sworn upon my oath depose and state as follows:

1. That I am an investigator with the Lincoln County Sheriff's Office.
2. That the Lincoln County Sheriff's Office had an undercover narcotics agent employed and working in the Star Valley area since January of 1987.
3. That the narcotics agent's working undercover name was Georgia Rollins. Her actual name was Veronica Davison.
4. That on April 14, 1987, Sergeant David Welchman and I monitored and taped a conversation between Georgia Rollins, Suni Jorgensen and Kathy Jorgensen at the Dale and Kathy Jorgensen residence in Fairview, Lincoln County, Wyoming. Georgia Rollins was wearing a body microphone at that time.
5. That during that conversation, Sergeant Welchman and I overheard arrangements being made for the purchase and delivery of one half (½) ounce of marijuana.
6. That during that conversation, Ms. Davison examined a baggie of suspected marijuana at the Jorgensen residence and agreed to purchase another bag of marijuana in the weight of one half (½) ounce for one hundred forty dollars ($140.00).
7. That during the course of [the] day, Sergeant Welchman and I watched the Jorgensen residence and the vehicle owned by the Jorgensens, which is a 1982 Pontiac Firebird, which is maroon in color. We kept a time schedule of events and travels made [b]y Kathy Jorgensen and her daughter, Suni Jorgensen. At 1426 hours, * * * we observed the Jorgensen vehicle leave the Jorgensen residence. At 1457 hours we observed the Jorgensen [vehicle] at the residence of Ver Dean Hyde in Auburn, Wyoming. Ver Dean Hyde's residence [is] located on the south side of the Lincoln County Road No. 131, approximately 100 yards west of State Highway 238. Dean Hyde's house is brown in color with a brown metal roof. Ver Dean Hyde is also commonly known as Dean Hyde.
8. That at 1517 hours, Suni Jorgensen telephoned Ms. Davison and stated that she couldn't get any stuff at Auburn, but it would be brought to Suni Jorgensen's house by 7:00 p.m. that night. But at 1525 hours, Ms.

This information was sufficient "to warrant a reasonably cautious or prudent man to have a belief that there was a crime being committed or one that had been committed." *Smith v. State*, 557 P.2d 130, 133 (Wyo.1976). As the trial court noted:

> [T]hose * * * salient facts * * * caused the Court to conclude that a reasonable person looking at those facts would decide that there is probably some marijuana on the premises known as the Ver Dean residence. We don't know whose marijuana it is. We don't know where it is. But there is sure as heck a connection. And so a warrant ought to be issued * * *.

The "affidavits of probable cause for search are to be tested by much less rigorous standards than those governing admissibility of evidence at the trial," *Deeter v. State*, 500 P.2d 68, 70 (Wyo.1972), and must be reviewed in a common sense and realistic fashion. *Croker v. State*, 477 P.2d 122, 127 (Wyo.1970). A magistrate's determination that probable cause exists is entitled to "great deference," *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677, 693 (1984); and *Bonsness*, 672 P.2d at 1292. Application of these oft-stated rules to the affidavit in this case supports the court commissioner's issuance of the warrant and we determine that the search of appellant's house and subsequent seizure was proper.

The search of appellant's house can also be sustained under the "good faith" rule set out in *Leon*, 468 U.S. at 897, 104 S.Ct. at 3408. In that case, the United States Supreme Court held that when "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," and the warrant is subsequently found to not be based on probable cause, the exclusion-

ary rule will not operate to bar the introduction of the seized evidence. *Id.* at 920, 104 S.Ct. at 3419. In this case, once the court commissioner issued the search warrant, the officers were entitled to rely on it in conducting the search of appellant's house. The purposes of the exclusionary rule would not be furthered by "preventing the use in the prosecution's case in chief of inherently trustworthy tangible evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate that ultimately is found to be defective." *Id.* at 907, 104 S.Ct. at 3412.[2]

The trial court ruled that the garage was within the curtilage of the house, and thus the scope of the warrant included the garage. In reaching this conclusion, the court used the factors stated in *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). In *Dunn*, the Court addressed the issue of whether a barn was "for Fourth Amendment purposes, within the curtilage of the house." *Id.* at 296, 107 S.Ct. at 1137. In concluding that the barn was *not* "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection," *id.* at 301, 107 S.Ct. at 1139, the Court focused on four factors: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *Id.* at 301, 107 S.Ct. at 1139.

In this case, the trial court focused on these same factors, and concluded that the garage was within the curtilage of the house. The trial court found that the garage was fifty yards from the house, was enclosed by fences and roads in the same

Davison went to the residence of Kathy Jorgensen and she overheard Suni Jorgensen telling her mother, Kathy Jorgensen, that she (meaning Barbara Hyde) was unwilling to get to her unless Dean was there. Suni said she (meaning Barbara Hyde) would * * * drop it off by 7:00[ ]p.m. that night.

9. That at 1642 hours I observed a Toyota pickup, registered to Ver Dean Hyde parked at the residence of Kathy Jorgensen in Fair-

view, Wyoming. That at approximately 1659 hours, Ms. Davison went to the residence of Kathy Jorgensen and purchased one half (½) ounce of marijuana from Kathy Jorgensen for the sum of one hundred thirty dollars ($130.00).

2. The magistrate here was an experienced, competent lawyer serving as court commissioner.

area as the house, was not separated from the house by any barriers, and was in common use with the house. The effect of this conclusion was to extend to the garage the protections of the Fourth Amendment, and to include it within the scope of the valid search warrant.

■ Contrary to the trial court, we are not convinced that the garage was within the curtilage of the house and thus within the scope of the search warrant, according to the four factors set out in *Dunn.* It is not necessary, however, that we decide that issue for the purposes of this case. Assuming, arguendo, that the search of the garage and subsequent seizure were beyond the scope of the warrant, we find that any error in not suppressing the evidence obtained from the garage was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), reh. denied, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); and *Campbell v. State,* 589 P.2d 358 (Wyo. 1979). The searching officers had already lawfully seized nine marijuana plants, bags and boxes of marijuana, scales and other paraphernalia. The items of evidence seized in the garage were cumulative evidence and there was more than enough legally-seized evidence to convict appellant. *Ortega v. State,* 669 P.2d 935 (Wyo.1983).

## II

■ In the final issue on appeal, appellant challenges the constitutionality of the Wyoming Crime Victim's Compensation Act, W.S. 1–40–101 through –119 (Cum. Supp.1987).[3] Appellant did not raise this issue in the trial court.

We have held that we will not consider a constitutional challenge raised for the first time on appeal. *Jahnke v. State,* 692 P.2d 911, 928 (Wyo.1984).

> Our rule is that in the absence of fundamental error affecting a substantial right of the appellant or involving the jurisdiction of the court, we do not consider

questions sought to be raised for the first time on appeal. *Hopkinson v. State,* Wyo., 664 P.2d 43 (1983), cert. denied [464] U.S. [908], 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); *Nickelson v. People,* Wyo., 607 P.2d 904 (1980); and *Nisonger v. State,* Wyo., 581 P.2d 1094 (1978). Furthermore, unless plain error is present, questions concerning the constitutionality of a statute are not considered on appeal if the party presenting them failed to present or argue the contentions in the trial court.

Id. at 928, quoted in *Sodergren v. State,* 715 P.2d 170, 174–75 (Wyo.1986). See also *Teton Plumbing & Heating, Inc. v. Board of Trustees, Laramie County School District Number One,* 763 P.2d 843 (Wyo. 1988). We have also said that "[c]onstitutional questions are too important to be answered unless fully and properly presented. It is necessary that the constitutional questions be specifically phrased and completely argued before it would be proper for this court to pass upon them." *Jackson v. State,* 624 P.2d 751, 755 (Wyo. 1981), cert. denied 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981) (citations omitted). See also *State v. Sodergren,* 686 P.2d 521, 527 (Wyo.1984). Furthermore, a statute "will not be declared unconstitutional unless the unconstitutionality is clear." *State v. Wilson,* 76 Wyo. 297, 301 P.2d 1056, 1063 (1956).

Appellant has neither argued plain error, *Sodergren,* 715 P.2d at 175, nor presented any cogent argument or cited authority demonstrating the unconstitutionality of the Wyoming Crime Victim's Compensation Act. Therefore, we decline to address his second issue.

AFFIRMED.

URBIGKIT, J., concurs in the result only.

---

3. W.S. 1–40–119(a) (Cum.Supp.1987) states in pertinent part:

> In addition to any fine or other penalty prescribed by law, a defendant who pleads

guilty or nolo contendere to, or is convicted of, the following criminal offenses shall be assessed a surcharge of not less than fifty dollars ($50.00)[.]