Darreal J. MEDRANO, Appellant
(Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 95–31.

Supreme Court of Wyoming.

March 26, 1996.

Sylvia Lee Hackl, State Public Defender; Gerald M. Gallivan, Director, Defender Aid Program; John McClanahan, Student Intern; Stephanie Sprecher, Student Intern; and Jay Bachlet, Student Intern (argued), for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; Larry M. Donovan, Senior Assistant Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kristi T. Sansonetti, Special Assistant Attorney General, Pro Hac Vice (argued), for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

LEHMAN, Justice.

Defendant Darreal Medrano appeals his conviction for possession with the intent to deliver a controlled substance, marijuana, in violation of W.S. 35–7–1031(a)(ii) (1977) and W.S. 35–7–1014(d)(xxi) (1977).

We affirm.

Defendant, though failing to include a separate statement of the issues in his appellate brief as required by W.R.A.P. 7.01(d), presents the following for our consideration:

Argument I

> The court below erred in admitting into evidence items seized during Mr. Medrano's arrest because (1) the arrest was unlawful as the arresting officer lacked reasonable articulable suspicion required to stop Mr. Medrano (2) officer McDonald's subsequent actions were not reasonably related in scope to the circumstances which justified the interference in the first place and (3) Mr. Medrano did not give voluntary consent to search his vehicle.

Argument II

> The trial court violated Mr. Medrano's right to legal counsel guaranteed by the Sixth Amendment of the Constitution of the United States when it admitted at trial incriminating statements deliberately elicited from Mr. Medrano by an undisclosed agent of the State of Wyoming and where such statements were the only direct evidence indicating Mr. Medrano's knowing possession of a controlled substance.

Argument III

The trial court erred by allowing as substantive evidence against Mr. Medrano the unconstitutionally obtained hearsay statement of Ms. Clara Calderon, by failing to sua sponte give a limiting instruction, and by allowing the prosecutor to use substantively, inadmissible evidence under the guise of impeaching its own witness.

Argument IV

The trial court erred by allowing Officer Bruce Dexter to testify substantively regarding Ms. Calderon's hearsay statement and committed plain error by failing to sua sponte give a limiting instruction.

The State gives a more concise statement of the issues:

I. Whether the trial court erred in allowing the contraband to be admitted into evidence.

II. Whether the trial court erred in allowing the testimony of Clara Calderon to be admitted into evidence.

III. Whether the trial court erred in allowing the testimony of Officer Bruce Dexter to be admitted into evidence.

### FACTS

On May 19, 1994, Officer Carl McDonald of the Wyoming Highway Patrol heard a broadcast over his radio that a robbery had occurred in Fort Collins, Colorado at about 12:35 p.m. The robber was described as a white male in his thirties with brown hair, a partial beard, and wearing blue jeans and a blue shirt. The getaway vehicle was described as a white Mercury Topaz bearing license plates with a white background and dark blue or black lettering, possibly a Wyoming plate. A later broadcast stated that the car may have been a Honda Prelude.

Officer McDonald headed south on interstate highway I–25 towards the Colorado border in an effort to assist other officers who were keeping vigil in the event the suspect entered Wyoming. At about 2:00 p.m., Officer McDonald observed defendant's white two-door Chevrolet coupe with two occupants traveling north on I–25. The car had license plates with a white background and dark blue lettering from Nebraska. Following the vehicle, Officer McDonald concluded that the driver resembled the description of the robbery suspect, and the car was then pulled over.

Officer McDonald and another officer separately interviewed the defendant and his passenger. During the interview with Officer McDonald, defendant appeared nervous; he was perspiring and licking his lips, avoided eye contact with the patrolman and his hands trembled. Defendant stated that he had borrowed the car and that the car was owned by a man named Reyes. However, when the registration was produced, the owner was listed as Garsaro.

Comparing notes, the officers discovered that each had received very different versions regarding where the two men had met, where they were going and when they had left Denver. Returning to the men, the officers further inquired whether they possessed any large quantities of cash or had in their possession weapons or drugs. Defendant responded that he had $170, while the passenger had $800; both denied possessing weapons or drugs. Consent to search the vehicle was given, with defendant even offering to open the trunk. The search uncovered several bricks of marijuana in defendant's bag in the back seat and one brick in the passenger's bag, a total amount of approximately twelve pounds. Defendant and the passenger were then placed under arrest.

Defendant filed a motion to suppress, and a hearing was held on August 25, 1994. After hearing testimony, the district court denied the motion finding reasonable suspicion for the stop of defendant's vehicle and allowed the marijuana into evidence.

At defendant's trial, in addition to the above, evidence was also introduced through the testimony of Clara Calderon, who had spoken to defendant while he was in jail awaiting trial, that defendant had admitted he knew the marijuana was in the car and that it was indeed his. Defendant was convicted after a jury trial, and now appeals that conviction.

## DISCUSSION

### A. The Suppression Hearing

Defendant contends that the marijuana should have been suppressed for several reasons: (1) Officer McDonald lacked reasonable suspicion to make the initial stop; (2) once it became clear that defendant did not meet the description of the robbery suspect, the officer had no further reasonable suspicion to continue his investigatory stop; (3) the officer's actions went beyond the scope of the reason for original detention; and (4) defendant's consent to search the vehicle was not freely given.

■ Evidentiary rulings of the trial court are not generally disturbed on appeal unless a clear abuse of discretion is demonstrated. *Morris v. State*, 908 P.2d 931, 934 (Wyo. 1995); *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). An abuse of discretion is said to mean an error of law committed by the trial court under the circumstances. *Martinez v. State*, 611 P.2d 831, 838 (Wyo.1980). In the context of suppression hearings we have said:

> Findings on factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. *Hyde v. State*, 769 P.2d 376, 378 (Wyo.1989); *Roose v. State*, 759 P.2d 478, 487 (Wyo.1988). *See* W.R.Cr.P. 12(f) (effective March 24, 1992) (formerly W.R.Cr.P. 16). Since the district court conducts the hearing on the motion to suppress and has the opportunity to: assess the credibility of the witnesses; the weight given the evidence; and make the necessary inferences, deductions, and conclusions, evidence is viewed in the light most favorable to the district court's determination. *United States v. Werking*, 915 F.2d 1404, 1406 (10th Cir. 1990). *See Rands v. State*, 818 P.2d 44, 46 (Wyo.1991). The issue of law, whether an unreasonable search or seizure occurred in

violation of constitutional rights, is reviewed de novo. *See Lopez v. State*, 643 P.2d 682, 683–85 (Wyo.1982); *Cook v. State*, 631 P.2d 5, 7–8 (Wyo.1981); and *United States v. Walker*, 941 F.2d 1086, 1090 (10th Cir.1991) *cert. denied*, 502 U.S. 1093, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992).

*Wilson*, 874 P.2d at 218.

■ In previous opinions, this court has noted that there are three categories or tiers of interaction between police and citizens. *See Wilson*, 874 P.2d at 220; *Collins v. State*, 854 P.2d 688, 691–92 (Wyo.1993). The category concerned in this case is the investigatory stop which represents a seizure and, consequently, invokes Fourth Amendment protections. *Wilson*, at 220. However, because the seizure is of a less intrusive nature than an arrest, it requires only "the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime." *Id.* A law enforcement officer must possess the reasonable suspicion before making the seizure. *Wilson*, at 225.

■ Defendant contends, based on differences between his appearance and the description of the robbery suspect, that Officer McDonald lacked reasonable suspicion to stop him. He also argues that even if the stop was justified, once it was determined that he was not the robber, the investigation still continued. In addition, he claims that the investigation by the officers went beyond the scope of the initial detention by asking questions relating to weapons and drugs and then seeking to search his vehicle.

Officer McDonald, at the time of his contact with defendant's vehicle, was confronted with the following:

| Robbery Suspect | Defendant |
|---|---|
| A White male | An Hispanic male |
| Partial beard | Partial beard |
| Blue shirt | White shirt |
| Driving white Mercury Topaz, later changed to possibly a Honda Prelude | Driving white Chevrolet Cavalier |
| License plates with white background, dark blue or black lettering, possibly from Wyoming | Nebraska plates with white background and dark blue lettering |

These factors together with the reasonable inferences which can be drawn therefrom are the "specific and articulable facts" required for an investigatory stop. Eyewitness descriptions of a crime are, by their very nature, not exact. The defendant and his vehicle fell within the realm of possible suspects when the factors and the reasonable inferences drawn from such are taken into account.

Furthermore, defendant was traveling in a direction from Fort Collins approximately one and a half hours after the crime. Defendant attempts to claim that he was not "within the range of possible flight" because it is only about 45 miles to Fort Collins from Cheyenne and, if the robber had come that way, he would have already been long past. However, defendant makes the unwarranted assumption that the robber would have fled Fort Collins immediately after the robbery. It is not unreasonable to anticipate that the robber may have taken an indirect route or even stopped somewhere before leaving the city. Therefore, the time difference between the robbery and defendant's appearance on I-25 near Cheyenne is not so great as to remove him from "the range of possible flight."

While acknowledging that there are differences between the description and defendant, we find that they are sufficiently close to constitute specific and articulable facts which would give rise to a reasonable suspicion that defendant may have been the one who committed the robbery in Fort Collins.

> The circumstances present in this case, along with reasonable inferences by an experienced police officer, furnished ample grounds for finding a reasonable and objective basis for an investigatory stop of the [defendant's vehicle].

*Cook v. State,* 631 P.2d 5, 8 (Wyo.1981).

■ After the stop, the investigation by the officers brought to light a plethora of other factors: (1) defendant acted nervous, refused to make eye contact when answering questions, and his hands shook despite the pleasant weather; (2) defendant and the passenger were carrying a large amount of cash; (3) the name defendant gave Officer McDonald as being the owner of the car was not the name listed on the car registration; and (4) defendant and his passenger gave conflicting stories concerning where they were going, where they had met and when they had left Denver. When viewed in isolation, each of the factors could have an innocent basis; however, when viewed as a whole, they constitute grounds for a reasonable suspicion that criminal activity is afoot. *State v. Welch,* 873 P.2d 601, 604 (Wyo.1994). Based on the foregoing, we conclude there were specific and articulable facts which gave rise to a reasonable suspicion that defendant may have been engaging in criminal activity. That suspicion existed throughout the officers' investigation until the contraband was found and, indeed, was enhanced as the investigation proceeded. *See Collins v. State,* 854 P.2d at 695 (a detention based on reasonable suspicion can, through the development of additional facts during the investigation, evolve into probable cause for arrest).

■ We find defendant's contention that Officer McDonald exceeded the scope of the initial stop by inquiring if he had drugs or weapons on his possession to be meritless. There is nothing inherently wrong with asking such questions. In this case, there was considerable evidence to support a reasonable suspicion that defendant and his passenger may have been engaging in illicit activity. Initially, that suspicion was based on the Fort Collins robbery, but later factors that came to light after the stop could have supported a reasonable suspicion that something else was afoot. The officer did not act illegally in asking the questions.

Finally, defendant claims that his consent to search the vehicle was not freely given. Defendant's claim is predicated upon his belief that his detention and questioning were illegal. *See e.g., United States v. Fernandez,* 18 F.3d 874, 881 (10th Cir.1994). Having found that the stop and subsequent questioning of defendant were within constitutional parameters, defendant's claim necessarily fails. The record clearly demonstrates that his consent to search was freely given.

### B. The Testimony of Clara Calderon

At trial Calderon testified that defendant, during a visit with him while he was in jail,

admitted that he knew there was marijuana in the car and that it was his. After her visit with defendant, Calderon was interviewed by a police detective regarding that conversation, and she repeated what defendant had told her. However, during her testimony at trial, Calderon stated that she had talked to the detective prior to her visit with defendant. The State then used a transcript of the recording the detective had made in order to refresh her recollection of the timing of the events and, also, to impeach her trial testimony.

Defendant contends that several errors occurred during the testimony of Calderon. He contends that she was an informant for the police and that by initiating a conversation with him regarding the charged crime, his right to counsel, as guaranteed by the Sixth Amendment to the United States Constitution, was violated. Further, he alleges that her statements, which were hearsay, were improperly admitted as substantive evidence. Defendant additionally argues that if the statements were admitted for impeachment purposes, then the trial court erred by not sua sponte giving the jury a limiting instruction.

 A careful review of the record has convinced us that Calderon did not talk to police until after her visit with defendant; consequently, there was no violation of his Sixth Amendment right to counsel. *Kuhlmann v. Wilson,* 477 U.S. 436, 459, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986); *see also State v. Teel,* 793 S.W.2d 236, 245 (Tenn. 1990) (defendant must show that agents of the state deliberately induced, enticed or prompted incriminating remarks to require suppression). The government may not intrude into the attorney-client relationship to the prejudice of a criminal defendant. *Illinois v. Perkins,* 496 U.S. 292, 299, 110 S.Ct. 2394, 2398–99, 110 L.Ed.2d 243 (1990); *Haworth v. State,* 840 P.2d 912, 916–17 (Wyo. 1992). Absent a waiver of that right, the government may not initiate any interrogation about the charged crime. *Suliber v. State,* 866 P.2d 85, 90–91 (Wyo.1993). In this case the police did not initiate contact with defendant. Contrary to defendant's claims, the record clearly demonstrates that Calder-

on had not talked with the police detective prior to her conversation with defendant.

 The record also is clear on the fact that Calderon's prior out-of-court statements were not substantively introduced into evidence. Rather, they were used for impeachment purposes and to refresh her recollection, uses which are permitted under our rules of evidence. W.R.E. 607 and 612. In the same vein, we find no error in the trial court not giving a limiting instruction sua sponte. It is the duty of counsel to request such an instruction when it is desired. W.R.E. 105; *Sybert v. State,* 724 P.2d 463, 467–68 (Wyo.1986); *see also Channel v. State,* 592 P.2d 1145, 1150 (Wyo.1979) (error not to give limiting instruction on prior statements used for impeachment when requested by defense counsel).

> There are sound reasons for requiring the opponent to request the trial judge to limit the scope of the evidence by instructing the jury. * * * [T]his manner of proceeding appropriately leaves to the opposing trial counsel the option of concluding that, as a matter of strategy, he is better off without an instruction than with one, in that an instruction would serve only to remind the jury of what it has heard or to re-emphasize the evidence in the minds of the jurors, and perhaps to suggest to the jury a use for the evidence which is best left unmentioned.

*Sybert,* 724 P.2d at 467; (*quoting* 1 D. Louisell & C. Mueller, *Federal Evidence* § 45, at 342–343 (1977)). If we were to require the trial judge to sua sponte issue such instructions, we would remove from opposing counsel the option to choose for himself for reasons of strategy whether he desired the instruction or not. We decline to do so.

## C. The Testimony of Officer Dexter

 The last issue raised by defendant concerns the trial testimony of Officer Dexter, who testified immediately after Calderon. Officer Dexter testified: (1) he had interviewed Calderon about her talk with defendant; (2) he talked with her after that conversation, not before; (3) he repeated the substance of what Calderon told him that defendant had said; and (4)

he told how he had Calderon return for a second interview for the purpose of taping it. Defendant claims it was error for this testimony to be admitted because it was hearsay offered for its truth and, at the least, that the trial court should have sua sponte issued a limiting instruction.

Reviewing the record, we conclude there was no error in the admission of Officer Dexter's testimony. While it was partially hearsay when he repeated Calderon's out-of-court statements, they were not offered for their truth. The officer's testimony followed that of Calderon wherein she contradicted her prior statements by giving a different version of the events than what she had given to Officer Dexter. In this context, Officer Dexter's testimony was to show not that Calderon's statements were true but that she had made them at that time. There was no error in its admission and, if requested, a limiting instruction would have been appropriate. Again, however, defendant did not request such an instruction and the trial court was under no obligation to instruct the jury.

### CONCLUSION

There being no error in defendant's trial, his conviction and sentence are hereby affirmed.