Terrice Darrell BROWN, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 96–196.

Supreme Court of Wyoming.

Sept. 19, 1997.

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Asst. Appellate Counsel; and Scott Klosterman (argued), Student Intern, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Hugh Kenny (argued), Senior Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

Having entered a conditional guilty plea to one count of robbery pursuant to W.R.Cr.P. 11(a)(2), Terrice Brown appeals the district court's denial of his motion to suppress.

We affirm.

Brown states the following issues:

I. Was the arrest of Appellant unlawful because it was made without a warrant and without probable cause in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution?

II. Did District Court err by denying Appellant's motion to suppress all evidence obtained after his arrest because the evidence was the product of an unlawful arrest?

The State rephrases the issues:

1. Was Appellant lawfully arrested for a violation of Wyo. Stat. § 6–5–204(a), *interference with a police officer?*

2. Did the District Court abuse its discretion by denying Appellant's Motion to Suppress Evidence?

## FACTS

At approximately 2:50 a.m., Deputy Brett Stokes observed a car drifting across the center line as it traveled east on Interstate 80 near Rock Springs. Stokes followed the car for about two miles observing it drift from side to side. He stopped the car after he observed its tire brush the center divider as it exited off the interstate. Stokes testified that, given the early morning hour and the erratic driving, he suspected a DUI when he pulled the car over.

About an hour prior to this stop, Stokes had heard a radio transmission which described two black males with a sawed-off shotgun as suspects in a robbery occurring at a 7–Eleven in Rock Springs. As Stokes approached the car, he became wary because he could not see anyone in the vehicle. As he walked into view of the front seat, he saw two black males slouched down so that their heads were not visible over the top of the car seats. Stokes stopped his approach, returned to his vehicle and called for backup.

At least four police cars responded to Stokes' request for backup. With guns drawn, the police ordered the driver, appellant Brown, and the passenger, Tyrone Jackson, out of the car and onto their knees, whereupon the police cuffed them and placed them into separate cars. In response to a request for identification, Brown falsely stated his name was Glenn Crockett. As validation for that identity, Brown advised that he had been at a party and provided to police the phone number at the party address. However, when the police called the party, they were told that Glenn Crockett was still present at the house. They were informed that Tyrone Jackson had left the party with Terrice Brown thirty minutes earlier.

Once Brown admitted his identity, a check revealed that neither Brown nor Jackson had a valid driver's license. Stokes informed Brown he was under arrest for interference with a police officer for providing a false identity, and the Rock Springs police took Brown to the city jail. During the booking process, police discovered in Brown's sock a marked two dollar bill from the 7–Eleven robbery. Brown was then charged with aggravated robbery.

Brown filed a motion to suppress and/or dismiss, requesting suppression of all tangible and intangible evidence acquired after the police ordered him out of the car at gunpoint, asserting the evidence was the product of an unlawful arrest. The district court found the arrest lawful and denied Brown's motion following a hearing. Brown subsequently entered a conditional plea of guilty to one count of robbery, in violation W.S. 6–2–401(a)(ii), reserving his right to appeal the court's adverse ruling on his motion to suppress. This timely appeal follows.

## DISCUSSION

### Standard of Review

■■■ Generally, we do not disturb a trial court's evidentiary rulings unless the court has clearly abused its discretion. *Medrano v. State,* 914 P.2d 804, 807 (Wyo.1996); *Wilson v. State,* 874 P.2d 215, 218 (Wyo.1994). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986). We give deference to the trial court's findings of fact unless they are clearly erroneous, recognizing that court has had the opportunity to assess the credibility of witnesses, weigh the evidence and make the necessary inferences, deductions and conclusions. *Jones v. State,* 902 P.2d 686, 690 (Wyo.1995) (*citing Wilson v. State,* 874 P.2d at 218). The issue of law, whether an unreasonable search or seizure

occurred in violation of constitutional rights, we review de novo. *Wilson,* at 218.

### Validity of the Stop and Arrest

■■■ Warrantless searches and seizures are per se unreasonable under both the Fourth Amendment of the United States Constitution and Article 1, Section 4 of the Wyoming Constitution. *Dickeson v. State,* 843 P.2d 606, 611 (Wyo.1992) (*citing Ortega v. State,* 669 P.2d 935, 940 (Wyo.1983)). In evaluating whether police-citizen encounters are constitutionally valid, we have identified three categories or tiers of interaction between police and citizen:

■■ The most intrusive encounter, an arrest, requires justification by probable cause to believe that a person has committed or is committing a crime. [2] The investigatory stop represents a seizure which invokes Fourth Amendment safeguards, but, by its less intrusive character, requires only the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime. [3] The least intrusive police-citizen contact, a consensual encounter, involves no restraint of liberty and elicits the citizen's voluntary cooperation with non-coercive questioning.

*Wilson,* 874 P.2d at 220 (citations omitted). *See also Collins v. State,* 854 P.2d 688, 691–92 (Wyo.1993).

■■■ Because in this case the reason for stopping the car is different from the articulable facts and suspicion which led Officer Stokes to implement intrusive measures after the stop, we employ three steps of analysis. In order for Brown's arrest to be valid, the initial stop must have been justified at the inception. *Collins v. State,* 854 P.2d at 691 (brief seizures or *Terry* stops, must be supported by reasonable suspicion); *see also United States v. King,* 990 F.2d 1552, 1557 (10th Cir.1993) (To determine whether an investigative detention or protective search is reasonable, the court must decide whether the stop is justified at its inception, and whether the officer's actions are reasonably related to the scope of the circumstances.). Second, articulable facts must have existed to

demonstrate that Stokes had a reasonable suspicion to justify the intrusive measures used to ensure his safety. *United States v. Perdue,* 8 F.3d 1455, 1462 (10th Cir.1993) (a seizure has to be reasonable at its inception and reasonable as conducted). Third, Stokes must have had probable cause at the time of Brown's arrest. *See, e.g., Wilson,* 874 P.2d at 220.

■■■ Brown does not challenge the constitutional validity of the first and third stages of the police encounter. Given that Stokes observed Brown cross the center line and hit the center divider as he exited off the interstate, Stokes had a reasonable suspicion that the driver was under the influence of a controlled substance to justify making the initial stop. *See Keehn v. Town of Torrington,* 834 P.2d 112, 115–116 (Wyo.1992) and W.S. 31–5–233. Likewise, Stokes had probable cause when he arrested Brown for interference with a police officer. We have previously held that providing false information to a police officer can constitute interference. *Newton v. State,* 698 P.2d 1149, 1150–1151 (Wyo.1985).

The crucial issue remaining is whether at the time the police ordered Brown out of the car at gunpoint they transformed the traffic stop into an arrest without probable cause. The State concedes that probable cause to make an arrest did not exist at the time the police ordered Brown out of the car, but argues that the arrest did not occur until after they confirmed that Brown had identified himself falsely.

■■■ To decide this issue, we must consider whether the facts Stokes learned during the first few moments of his investigation along with the information in the radio transmission are sufficient to justify the use of the intrusive measures. In this regard the case at bar is notably similar to *Medrano v. State,* 914 P.2d 804 (Wyo.1996), in that during the police investigation of both cases new facts came to light that created a new suspicion. In *Medrano,* we upheld a conviction for possession with the intent to distribute a controlled substance, even though the initial suspicion articulated for stopping Medrano was that he generally fit the description of a

robbery suspect. 914 P.2d at 808. Once the police officer determined Medrano was not the robbery suspect, this court held that the facts and circumstances which came to light during the investigation constituted sufficient grounds for a reasonable suspicion that criminal activity was afoot. 914 P.2d at 808. *See also Collins v. State,* 854 P.2d at 695 (a detention based on reasonable suspicion can, through the development of additional facts during the investigation, evolve into probable cause for arrest).

Although we have not previously considered whether the use of intrusive measures as invoked in this case transforms an investigatory stop into an arrest, with regard to officer safety we have recently said:

> Nothing written here should be cited for the proposition that proper regard for officer safety might run police officers afoul of an arrestee's constitutional rights. The concerns for officer safety articulated by *Terry* [*v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] have only increased exponentially over the years.

*Mickelson v. State,* 906 P.2d 1020, 1023 (Wyo. 1995).

The Tenth Circuit examined the use of intrusive measures in making *Terry* stops in *United States v. Perdue,* 8 F.3d 1455 (10th Cir.1993). In *Perdue,* the officers who made the stop were assigned to perimeter security during a search of private property for drugs. 8 F.3d at 1458. The court held the officers were justified in drawing their weapons and ordering both the driver and the passenger out of the car and onto the ground because the area was remote enough that anyone using the road was probably visiting the property being searched and the officers were aware that weapons had already been found on the property. *Id.,* at 1462–63. In holding that police officers may draw their weapons without transforming an otherwise valid *Terry* stop into an arrest, the court stated:

> While *Terry* stops generally must be fairly nonintrusive, officers may take necessary steps to protect themselves if the circumstances reasonably warrant such measures. "[T]he use of guns in connection with a stop is permissible where the police rea-

sonably believe [the weapons] are necessary for their protection." *United States v. Merritt,* 695 F.2d 1263, 1273 (10th Cir. 1982), *cert. denied* 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983). * * *

\* \* \* \* \*

This holding is consistent with the recent trend allowing police to use handcuffs or place suspects on the ground during a *Terry* stop. Nine courts of appeals, including the Tenth Circuit, have determined that such intrusive precautionary measures do not necessarily turn a lawful *Terry* stop into an arrest under the Fourth Amendment.

*Perdue,* 8 F.3d at 1462–63.

The intrusiveness of a search or seizure will be upheld if it was reasonable under the totality of the circumstances. *Perdue,* at 1462 (*citing Terry,* 392 U.S. at 19, 88 S.Ct. at 1878). *Cf. Collins,* 854 P.2d at 692 (holding that to determine the reasonableness of a seizure of an individual, the court will balance the interest of the government against the nature of the intrusion upon the individual). *See also United States v. King,* 990 F.2d 1552, 1559 (10th Cir.1993) (*quoting United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975)). In this case sufficient articulable facts existed to give Officer Stokes reasonable suspicion that precautionary measures were necessary to ensure his safety. Stokes knew that the robbery suspects were two black males with a sawed-off shotgun fleeing on foot. When Stokes decided to call for backup, he knew the time and proximity of the stop to the robbery, the race and number of passengers in the car, and the suspects' suspicious body position in their car seats. These facts and circumstances, taken in totality, give rise to the reasonable suspicion that the two in the car might be the armed suspects described in the radio transmission.

### CONCLUSION

Officer Stokes had specific articulable facts which gave rise to a reasonable suspicion that Brown might be one of the armed suspects in the 7–Eleven robbery. We thus

hold that because of the potential threat to the officer's safety, given the totality of the circumstances, the intrusiveness of the seizure was reasonable and did not constitute an arrest.

Brown's claim that we should suppress the evidence obtained after the police ordered Brown out of the car is predicated upon his belief that he was unlawfully arrested. Having found that the stop and subsequent arrest fall within constitutional limits, Brown's motion to suppress must necessarily fail.

Affirmed.