**Andre Nigel PENDELTON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 97–102.**

Supreme Court of Wyoming.

Sept. 23, 1998.

Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Diane M. Lozano, Assistant Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Mi-chael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and James Kaste, Student Intern., for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,*JJ.

TAYLOR, Justice.

Appellant claims the evidence used to convict him of burglary was obtained through a pretextual search. He now appeals the district court's denial of his motion to suppress this evidence. Finding that the police officers' actions were clearly proper, and the district court's denial of suppression correct, we affirm.

## I. ISSUES

Appellant, Andre Pendelton (Pendelton), presents this issue for review:

*ISSUE I*

The pretextual search of the appellant's home violated his constitutional rights as guaranteed by the Fourth Amendment of the United States Constitution and Art. I § 4 of the Wyoming Constitution.

Appellee, State of Wyoming, states the issue as follows:

Was the application for and execution of the search warrant to search appellant's apartment for controlled substances and paraphernalia a mere ruse to permit officers to search for evidence of burglary?

## II. FACTS

On December 30, 1995, police were notified that the glass on the front door at Friedl's Fashions in Thermopolis, Wyoming was broken, and it appeared to be a burglary. Officer Magelky was one of the officers investigating the report. After arriving at the scene, Officer Magelky walked through the store with the owner, who identified items he believed to have been taken. Until May 1996, efforts to find the perpetrator were unsuccessful.

On May 8, 1996, Pendelton's recently rejected girlfriend informed Officer Magelky

---

* Chief Justice at time of oral argument.

that Pendelton had broken into Friedl's, and that he had drugs in his home. Officer Magelky attempted to get a warrant to search Pendelton's home for evidence of the burglary, but a warrant was denied.

During the same time period, Officer Raymond was interviewing another informant providing a "wide array of information related to drugs." During this interview, the informant told Officer Raymond that Pendelton was supplying drugs to a juvenile female. Knowing of the additional information supplied by Pendelton's former girlfriend, and that Pendelton intended to move to Lander, Wyoming on May 12, 1996, Officer Raymond immediately sought and received a warrant to search Pendelton and his home for drugs.

On May 10, 1996 at about 6:00 p.m., Officers Raymond and Magelky, along with other law enforcement personnel, went to Pendelton's home, knocked on the door, and announced their presence. After explaining the search warrant to both Pendelton and his mother, in whose home Pendelton resided, the officers began the search. While Officer Raymond was searching a cardboard box found in Pendelton's bedroom, he discovered clothing tags bearing Friedl identification. He showed these items to Officer Magelky, who confirmed that they might be evidence of the burglary. The search produced evidence of drug use as well as further evidence of the burglary.

Pendelton was arrested and charged with felony burglary, Wyo. Stat. § 6–3–301 (1997), and misdemeanor possession of a controlled substance, Wyo. Stat. § 35–7–1031(c) (1997). Prior to trial, Pendelton filed a motion to suppress the evidence of the burglary. After an evidentiary hearing, the motion was denied. A two-day jury trial culminated in convictions on both counts. Pendelton was sentenced to a term of five to eight years in the penitentiary for burglary, and one year probation for possession, to be completed after he served his prison term. This timely appeal followed.

### III. STANDARD OF REVIEW

■ Motions to suppress evidence involve both questions of fact and law. As to ques-

tions of fact, we defer to the district court's ruling unless it is clearly erroneous. *Brown v. State*, 944 P.2d 1168, 1170 (Wyo.1997); *Simmers v. State*, 943 P.2d 1189, 1194 (Wyo. 1997). The ultimate issue of law, whether the search or seizure was unreasonable in violation of constitutional rights, is reviewed de novo. *Brown*, 944 P.2d at 1170–71; *Simmers*, 943 P.2d at 1194; *Medrano v. State*, 914 P.2d 804, 807 (Wyo.1996) (*quoting Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994)).

### IV. DISCUSSION

■ Pendelton contends the request for a warrant to search his home for drugs was purely pretextual. As factual support for this allegation, Pendelton presents his suspicions that when Officer Magelky was unable to obtain the warrant to search for evidence of a burglary, he "took advantage" of Officer Raymond's warrant "and turned the search warrant for drugs into a general search warrant rummaging through the Appellant's apartment for evidence of the Friedl burglary." These suspicions are based solely on Officer Magelky's frank admission that he, personally, expected to find evidence of the burglary in Pendelton's home. We need only look to Wyoming law to dispose of this claim.

Pendelton relies on our holding in *Brown v. State*, 738 P.2d 1092, 1094 (Wyo.1987). In *Brown*, 738 P.2d at 1096, evidence discovered during a protective sweep of a woman's home incident to her arrest on a minor traffic citation was held inadmissible because it was gained by "a ruse" and the search was solely "for the purpose of gathering evidence to permit charging another crime." We also stated:

A pretext search occurs when officers depart from routine procedure and engage in arrest and search activity which "would not have been undertaken *but for* [an] 'underlying intent or motivation' which, standing alone, could not supply a lawful basis for the police conduct."

*Id.* at 1095 (*quoting* 1 LaFave, *Search and Seizure*, § 1.4(3) at 93 (2nd ed.1987)) (emphasis in original).

In this case, the facts clearly fall outside the "but for" test articulated in *Brown*, 738

P.2d at 1095. Two separate informants told police officers that Pendelton possessed drugs. One of those informants (not his "jilted" girlfriend, as suggested by Pendelton) told police that Pendelton was providing drugs to a minor. With this information, Officer Raymond was certainly justified, if not compelled, to take official action. There was no departure from routine procedure.

■ Moreover, standing alone, there was clearly a lawful basis for the conduct of the officers. Pendelton does not contest the fact that probable cause supported the search warrant obtained by Officer Raymond. Neither does Pendelton claim that the officers searched any areas other than those places within the scope of the warrant. When an officer lawfully occupies a vantage point from which he can observe possible evidence in plain view, there is no unconstitutional search. *McDermott v. State*, 870 P.2d 339, 343 (Wyo.1994). The probable cause test for a plain view seizure is: " ' "The items observed must appear to the officer to be possible evidence" ' " of a crime. *Starr v. State*, 888 P.2d 1262, 1265 (Wyo.1995) *overruled in Jones v. State*, 902 P.2d 686, 692 (Wyo.1995) as to holding the seizure of evidence requires exigent circumstances (*quoting Kish v. State*, 642 P.2d 453, 456 (Wyo. 1982) and *McCutcheon v. State*, 604 P.2d 537, 540 (Wyo.1979)). The discovery of the evidence need not be inadvertent, nor is it necessary to show exigent circumstances to subject evidence to a warrantless seizure. *Jones*, 902 P.2d at 692; *McDermott*, 870 P.2d at 344.

Here, Officer Raymond, who was not part of the burglary investigation, made the initial discovery of possible evidence of the burglary while searching for drugs in a cardboard box located in Pendelton's bedroom. He immediately verified his suspicion with Officer Magelky, who had sufficient knowledge to ascertain whether the items were related to the Friedl burglary. *See Kish*, 642 P.2d at 456 (probable cause to seize four pair of boots based on knowledge from burglary investigation report). The remainder of the burglary evidence was discovered while searching only places where drugs or paraphernalia may be found. In short, the initial seizure of the evidence relating to the burglary was lawful. Pendelton's claim is completely without merit.

## V. CONCLUSION

The officers did not depart from routine procedure in the search of Pendelton's home. Neither is there evidence that the officers' search of Pendelton's home for drugs was motivated only by an intent to find evidence of another crime. The officers were lawfully searching the premises pursuant to a valid warrant. The district court's denial of Pendelton's motion to suppress is affirmed.