Argued and submitted June 27, reversed and remanded August 28, 1996

## STATE OF OREGON,
*Appellant,*

*v.*

## TERRY ANN PERRIN,
*Respondent.*

(Z257053 and Z257054; CA A89224 (Control) and A89225)

923 P2d 1249

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Eric M. Cumfer, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

The state appeals from a pretrial order suppressing evidence. We review for errors of law, ORS 138.220, and reverse.

On October 12, 1994, Officers Thompson and Unhara received a report from a police dispatcher about an accident and an intoxicated driver who had left the scene. Thompson testified that she was advised by the dispatcher that the other driver involved in the accident was following the suspect and was calling the dispatcher from a telephone in his car.[1] The officers located and contacted the informant, identified him as William McConnell and spoke to him briefly concerning his contact with the suspect.[2] McConnell then pointed out that the other driver was in a car that was being parked in the parking lot of an apartment complex down the street. The officers drove to that location with McConnell following behind them. The officers parked behind the car and turned on their overhead lights. After talking to defendant, the driver of the car, and McConnell again, defendant was arrested for DUII.

Before trial, defendant filed a motion to suppress the evidence of her condition at the time of the stop, in part on the ground that the officers lacked reasonable suspicion to stop her car under Article I, section 9, of the Oregon Constitution

---

[1] Thompson testified:

"The way the call came out of, an accident had occurred, and a person that was involved in the accident was following who he thought was a DUII driver.

"* * * * *

"* * * We were radioed a call, and we were in the area trying to find the person, the two parties that were involved in the accident. The complainant apparently had a car phone, and he called it in. And we had contacted McConnell on, I think it was 22nd * * * and Flanders, and we talked to him and he said, yeah, he'd been involved in an accident with the defendant, and he pointed out her car. And her car was just pulling into, we could see it from our location, it was just pulling into an apartment complex parking lot on Flanders just east of where we had found him. He pointed out her car."

[2] It is unclear what details McConnell told Thompson during their initial contact on the street. When asked on cross-examination, "What information did you have that a crime had been committed?" Thompson responded, "Mr. McConnell described to me the contact with her."

and the Fourth Amendment to the United States Constitution. The trial court granted the motion and ruled in part:

> "I'm going to grant the motion on the stop, and I'm going to tell you why. Clearly, number one, a traffic stop occurred. There's no question in my mind that's what we have here. And the question becomes did the officers have a reasonable suspicion, and the only basis for the reasonable suspicion is the report of the citizen, because they didn't observe the defendant driving except pulling into the lot.

> "I'm specifically going to find that there's no basis for me to doubt the reliability of the informant, because the name was provided, he was literally right there on the scene. But, I have to find out that there is nothing in the evidence, I listened carefully to the testimony of Officer Thompson in particular, *nothing described what the citizen told the officers.* Officer Thompson never related what it was that provided the basis of the report. An accident, pointing that—and then pointing to the car, 'that's the car.' There may have been more, but there was nothing in the evidence for that. I have no basis, no evidentiary basis to find a reasonable suspicion of the crime of DUII, and no other crime was asserted as the basis for the stop. And so for that reason, I am granting the motion to suppress the [inaudible] stop." (Emphasis supplied.)

On appeal, the state argues that because the citizen informant was identified and interviewed by the officers before the stop and the informant related personal observations, the officers had reasonable suspicion to make the stop. It follows, the state contends, that the trial court erred in holding that it was necessary for Thompson to relate all of the details of McConnell's report for reasonable suspicion to exist. Defendant counters that the officers' stop was illegal and that they only acquired the basis for the stop and the arrest *after* they talked with defendant.

Reasonable suspicion requires a belief that is "reasonable under the totality of the circumstances existing at the time and place [that] the peace officer acts." ORS 131.605(4). ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

In *State v. Sulser*, 127 Or App 45, 48, 871 P2d 126 (1994), we held that a police officer may lawfully conduct a stop for DUII if a driver's actions support a reasonable suspicion that he or she is impaired and that "there is no requirement that observable actions be themselves unlawful to support a reasonable inference that a crime is being committed." *Id.* In *State v. Bybee*, 131 Or App 492, 495, 884 P2d 906 (1994), we stated:

"When reasonable suspicion is based solely on a citizen informant's report, that report must contain some indicia of reliability. *State v. Shumway*, 124 Or App 131, 133, 861 P2d 384 (1993), *rev den* 318 Or 459 (1994). In *State v. Black*, 80 Or App 12, 721 P2d 842 (1986), we identified three factors that are important in determining the reliability of a citizen informant's report. One is whether the informant is exposed to possible criminal and civil prosecution if the report is false. That factor is satisfied if the informant gives his or her name to law enforcement authorities or if the informant delivers the information to the officer in person. *See State v. Koester*, 117 Or App 139, 843 P2d 968 (1992), *rev den* 315 Or 644 (1993). The second factor is whether the report is based on the personal observations of the informant. * * * The final factor is whether the officer's own observations corroborated the informant's information. The officer may corroborate the tip either by observing the illegal activity or by finding the person, the vehicle and the location substantially as described by the informant." *See also State v. Villegas-Varela*, 132 Or App 112, 115, 887 P2d 809 (1994).

The trial court focused on the fact that Thompson did not describe the content of McConnell's report made before the stop during his testimony in the hearing on the motion to suppress. We are unaware of any specific statutory or common-law requirement that would have required Thompson to relate on the witness stand all of the details of McConnell's report. Rather, the issue is whether the evidence as adduced, albeit conclusory, demonstrates that Thompson

could stop defendant lawfully under the totality of the circumstances. For instance, in *State v. Lichty*, 313 Or 579, 584, 835 P2d 904 (1992), a store clerk told a police officer that "I just found this wallet in the store, * * * a bag of coke fell out of it." Holding that the officer had reasonable suspicion to stop the defendant based on the clerk's statement, the Supreme Court explained:

"The standard is reasonable suspicion, an 'objective test of observable facts.' * * * If a police officer 'is able to point to specific and articulable facts which give rise to the inference that criminal activity is afoot, the officer has "reasonable suspicion" and hence can stop the individual for investigation.' " (Footnotes and citations omitted.)

In this case, McConnell identified himself by name and personally to the dispatcher and to the police officers. The record also demonstrates that McConnell's reports to the dispatcher and the officers were based on his personal contact with defendant. McConnell had told the dispatcher that he had been in an accident, and the officers corroborated that report by immediately contacting McConnell and locating defendant's vehicle pursuant to his directions while they were talking with him.

The fact that McConnell reported an "intoxicated driver" rather than describing the details that led him to that opinion does not, in and of itself, negate reasonable suspicion. As the court said in *Lichty*, "People often speak in the shorthand of opinions or conclusions, not in the form of a recitation of pure fact." 313 Or at 585.[3] Similarly, we conclude in this case that the officers had a reasonable suspicion under ORS 131.615(1) to stop defendant based on the totality of the circumstances known to them at the time.

In the light of the above holding, defendant's other arguments do not require discussion.

Reversed and remanded.

---

[3] In *Bybee*, a store clerk telephoned a police department and said, "I wanted to report a drunken driver." 131 Or App at 494. Based on the clerk's report and the subsequent corroboration by the arresting officer of the description of the defendant's vehicle that the clerk gave, we held that the informant's report had sufficient indicia of reliability under ORS 131.615(1).