**Benjamin Q. McCHESNEY,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

No. 97–63.

Supreme Court of Wyoming.

Oct. 20, 1999.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Assistant Appellate Counsel; and Jennifer Stone, Student Intern. Argument presented by Ms. Stone.

Representing Appellee: William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin

Sessions Cooley, Assistant Attorney General. Argument presented by Ms. Cooley.

Before LEHMAN, C.J., and THOMAS, GOLDEN, and TAYLOR*, JJ., and KALOKATHIS, D.J.

LEHMAN, Chief Justice.

Benjamin McChesney entered a conditional plea of guilty to a charge of possession of marijuana with intent to deliver, reserving the right to appeal the denial of his motion to suppress evidence. McChesney argues that the police officer who stopped his car in response to an anonymous tip of erratic driving did not have a reasonable suspicion necessary to support an investigatory stop. We agree and now reverse.

### ISSUES

McChesney presents one issue for our review:

Whether the district court erred by denying appellant's motion to suppress all evidence obtained after his arrest because there was no reasonable articulable suspicion to justify an investigatory stop.

The State of Wyoming, as appellee, states the issue in this manner:

The district court properly denied appellant's motion to suppress based on the information provided by the citizen-witness caller and based on the officer's independent corroboration of the call and his observations of the vehicle's occupants[.]

### FACTS

Because the arresting officer, Gillette Police Officer Eric Will, was the only witness to testify at the suppression hearing, the events leading to the stop of McChesney's vehicle are essentially undisputed. Around 10:20 a.m. on July 12, 1996, Officer Will heard a dispatch broadcast over mutual aid radio. A highway patrol dispatcher was relaying an anonymous REDDI (Report Every Drunk Driver Immediately) report of erratic driving. The dispatch indicated that a red Mercury with temporary plates was weaving between lanes, passing cars, and slowing down

* Chief Justice at time of oral argument; retired

in order to pass them again. The red Mercury, later determined to be driven by McChesney, was traveling east on Interstate 90 twenty-five miles west of Gillette. Will positioned himself to intercept the vehicle as it approached Gillette; he parked his vehicle in the I-90 median and waited. When asked why he waited for the vehicle, Officer Will testified:

Q. [BY PROSECUTOR] Okay. And why were you waiting for the vehicle to come by?

A. So that I could observe its driving and verify the information that I'd received over the radio.

Q. And what were you going to do if you saw this car, as far as verifying?

A. I was going to make sure—I was going to make sure that the vehicle did, in fact, match what—what I had heard over the radio and then follow the vehicle to see if any violations did, in fact, occur, and to possibly speak with the driver.

Q. Based on the broadcast, what kind of violations were you looking for, Officer?

A. Reckless driving, such as weaving. Increase, decrease in speed.

Officer Will waited seven to ten minutes before McChesney approached. As the McChesney vehicle passed by, all three of its occupants turned their heads in Officer Will's direction. The officer followed as McChesney exited I-90, turned left on Skyline Drive, and drove north to the Highway 14/16 intersection. During this time, Officer Will noticed the passengers looking in his direction. He also noticed the driver looking into his side and rearview mirrors. At the intersection of Highway 14/16, McChesney turned left and traveled north on Highway 14/16. As McChesney made a left turn into a convenience store parking lot, Officer Will, who was one car length behind McChesney, activated his red and blue overhead lights in order to effectuate a stop. During the time that he followed McChesney, Officer Will did not observe any erratic driving or any violations of the law.

November 2, 1998.

McChesney parked his vehicle at the front door of the convenience store, and Officer Will parked his vehicle directly behind McChesney's. When Officer Will approached McChesney, he noticed a green leafy material on his shirt and smelled the odor of marijuana. At the same time, Officer Will requested McChesney's driver's license, registration, and proof of insurance. Officer Will asked McChesney if he had been smoking, and McChesney admitted that he had smoked one joint earlier that day. Upon further questioning, McChesney handed Officer Will a baggy of marijuana from the back seat of the vehicle. He was then placed under arrest. Later, additional marijuana was found in a backpack taken from the vehicle.

McChesney was charged with possession of a controlled substance with intent to deliver in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii) (Michie 1997). After the district court denied McChesney's motion to suppress, McChesney entered a conditional guilty plea, reserving the right to appeal the suppression ruling. This timely appeal follows.

## STANDARD OF REVIEW

■■■ Findings on factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. *Wilson v. State,* 874 P.2d 215, 218 (Wyo.1994). Since the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions, evidence is viewed in the light most favorable to the district court's determination. *Id.* The issue of law, whether an unreasonable search or seizure has occurred in violation of constitutional rights, is reviewed de novo. *Id.; Brown v. State,* 944 P.2d 1168, 1170-71 (Wyo. 1997).

## DISCUSSION

In determining whether encounters between police and citizens are constitutionally valid, we have classified these encounters into three categories or tiers.

[1] The most intrusive encounter, an arrest, requires justification by probable cause to believe that a person has committed or is committing a crime. [2] The investigatory stop represents a seizure which invokes Fourth Amendment safeguards, but, by its less intrusive character, requires only the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime. [3] The least intrusive police-citizen contact, a consensual encounter, involves no restraint of liberty and elicits the citizen's voluntary cooperation with non-coercive questioning. *Wilson v. State,* 874 P.2d at 220 (citations omitted); *see also Collins v. State,* 854 P.2d 688, 691-92 (Wyo.1993); *Brown v. State,* 944 P.2d at 1171.

■■■ Although the district court treated the encounter between Officer Will and McChesney as an investigatory stop, our de novo review requires that we first determine whether McChesney was "seized" for purposes of the Fourth Amendment.[1] Perhaps recognizing the infirmity of the anonymous tip, the State contends that the encounter between McChesney and Officer Will was a consensual encounter, and the Fourth Amendment is not implicated. *See Collins v. State,* 854 P.2d at 695. We disagree.

■■■ A person has been seized within the meaning of the Fourth Amendment if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Wilson v. State,* 874 P.2d at 220 (quoting *U.S. v. Mendenhall,* 446 U.S. 544, 554-55, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). This test "is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's

---

1. In his brief, McChesney makes reference to Wyo. Const. art. 1 § 4, the Wyoming counterpart to the Fourth Amendment to the Constitution of the United States. Because McChesney has

failed to offer any argument to support an independent state constitutional claim, we will limit our discussion to federal constitutional principles. *See Wilson v. State,* 874 P.2d at 218-19.

words and actions would have conveyed that to a reasonable person." *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991). In the vehicle context, there is no question that the stopping of a vehicle and the detention of its occupants is a seizure. *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Colorado v. Bannister*, 449 U.S. 1, 4 n. 3, 101 S.Ct 42, 43–44 n. 3, 66 L.Ed.2d 1 (1980); *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). The question thus becomes whether, under the circumstances presented here, a reasonable person in McChesney's position would have believed that he was not free to leave.

Here, as McChesney turned into the convenience store parking lot, Officer Will, who was following one car length behind, activated his red and blue overhead lights and followed McChesney into the parking lot. At this point, had McChesney attempted to drive off or otherwise flee the scene, he could have been charged with a misdemeanor for attempting to elude a police vehicle after being "given visual or audible signal to bring the vehicle to a stop...." Wyo. Stat. Ann. § 31-5-225(a) (Lexis 1999). Certainly, if McChesney could have been charged with a misdemeanor at this point, he was not free to leave in the eyes of the law. In similar situations, numerous courts have found that when an officer activates a police vehicle's emergency lights he has initiated a stop. *Garza v. State*, 771 S.W.2d 549, 557–58 (Tex. Crim.App.1989); *State v. Walp*, 65 Or.App. 781, 672 P.2d 374, 375 n. 1 (1983); *State v. Stroud*, 30 Wash.App. 392, 634 P.2d 316, 318–19 (1981); *Hammons v. State*, 327 Ark. 520, 940 S.W.2d 424, 428 (1997); *State v. Burgess*, 163 Vt. 259, 657 A.2d 202, 203 (1995); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn.1993); *see* 4 Wayne R. LaFave, *Search and Seizure* § 9.3(a), at 108–110, n. 99–100 (3d ed.1996).

However, there is even more in this case. Officer Will parked his vehicle directly behind McChesney's, which was parked at the convenience store's front doors. McChesney's vehicle was thus blocked in, and he could not have driven away had he wanted to. Such action has also been found sufficient to constitute a seizure. *See* 4 Wayne R. LaFave, *Search and Seizure* § 9.3(a), at 108, n. 96. Therefore, under the totality of these circumstances, we conclude that Officer Will's actions constituted a show of authority sufficient to convey to any reasonable person that "voluntary departure from the scene was not a realistic alternative." *State v. Stroud*, 634 P.2d at 319. The propriety of our decision is underscored by Officer Will's testimony that he turned on his overhead lights in order to stop McChesney. McChesney had been "seized" within the meaning of the Fourth Amendment.

■ Because McChesney was "seized" for purposes of the Fourth Amendment, the next question is whether the stop complies with that amendment's protections from "unreasonable searches and seizures." We hold that it does not. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny establish that law enforcement officers may stop and temporarily detain citizens short of arrest if the officer has a reasonable suspicion that a person has committed or may be committing a crime. *Wilson v. State*, 874 P.2d at 220. In order to establish the reasonable suspicion necessary to justify a second tier *Terry* or investigatory stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences [drawn] from those facts, reasonably warrant that intrusion." *Olson v. State*, 698 P.2d 107, 109 (Wyo.1985) (quoting *Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. at 1880); *Wilson v. State*, 874 P.2d at 220.

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. The [*Illinois*

*v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] Court applied its totality of the circumstances approach in this manner, taking into account the facts known to the officers from personal observation, and giving the anonymous tip the weight it deserved in light of its indicia of reliability as established through independent police work. The same approach applies in the reasonable suspicion context, the only difference being the level of suspicion that must be established.

*Alabama v. White*, 496 U.S. 325, 330–31, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

■ An anonymous informant's tip, if it carries enough indicia of reliability, may provide reasonable suspicion for an investigatory stop. *See Goettl v. State*, 842 P.2d 549, 555 (Wyo.1992). The leading case in this area is *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301. There, an anonymous caller informed the police that "Vanessa White would be leaving 235–C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case." 496 U.S. at 327, 110 S.Ct. at 2414. Police officers followed Ms. White and stopped her just short of Dobey's Motel. *Id.* In holding that the police officers had reasonable suspicion to stop Ms. White, the Court placed special emphasis on the tipster's prediction of future behavior:

We think it also important that, as in *Gates*, "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." [*Illinois v. Gates*, 462 U.S.] at 245, 103 S.Ct., at 2335–36. The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably ex-

isting at the time of the call. What was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information—a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.

*496 U.S. at 332, 110 S.Ct. at 2417.*

■ Here, we have the classic anonymous tip—an unidentified voice on the telephone. Because an anonymous tipster's basis of knowledge and veracity are typically unknown, anonymous tips are considered less reliable. *Kaysville City v. Mulcahy*, 943 P.2d 231, 235–36 (Utah App.1997). The tip of an anonymous informant is unlike that of an identified citizen-informant. The latter tips are higher on the reliability scale because an identified informant exposes himself to possible criminal and civil prosecution if the report is false. *Id.; see Borgwardt v. State*, 946 P.2d 805, 807 (Wyo.1997) (citizen informants are presumptively reliable sources of information). Because the anonymous tip in this case is on the low end of the reliability scale, more information is required to raise a reasonable suspicion. *Alabama v. White*, 496 U.S. at 330–31, 110 S.Ct. at 2416.

■ The REDDI tip in the instant case merely recited the color, make, and direction of travel of the McChesney vehicle. These are facts that were available to anyone traveling on I–90 west of Gillette that July morning. Corroboration of this type of information does not increase the reliability of the tip.[2] *State v. Miller*, 510 N.W.2d 638, 642 (N.D.1994); *Pinkney v. State*, 666 So.2d 590, 592 (Fla.App.1996); *Commonwealth v.*

---

**2.** We recognize that several courts have found that corroboration of this type of information is sufficient to establish reliability. *See State v. Robles*, 171 Ariz. 441, 831 P.2d 440, 441–43 (App.1992); *State v. Melanson*, 140 N.H. 199,

665 A.2d 338, 340–41 (1995); *State v. Smith*, 638 N.E.2d 1353, 1355–56 (Ind.App.1994); *State v. Markus*, 478 N.W.2d 405, 408–9 (Iowa App. 1991). We decline to follow these cases because we find them inconsistent with *Alabama v. White*.

*Lyons*, 409 Mass. 16, 564 N.E.2d 390, 393 (1990); *Campbell v. State of Wash. Dept. of Licensing*, 31 Wash.App. 833, 644 P.2d 1219, 1221 (1982); *see* 4 Wayne R. LaFave, *Search and Seizure* § 9.4(h), at 222, n. 391–99. Where, as here, the informant makes no prediction of future behavior indicating "inside information," the investigating officer is required to corroborate the tip in some other fashion, usually by observing either a traffic violation or driving indicative of impairment. *Pinkney v. State*, 666 So.2d at 592.

This enhanced corroboration requirement stems from a number of legitimate concerns. An anonymous tip, without more, may be no more than a citizen's hunch or merely an assertion based on rumor. In addition, the potential for citizen abuse is readily apparent. Anybody with enough knowledge about a given person to make that person the target of a prank, or to harbor a grudge against that person, will certainly be able to formulate a REDDI tip. *See Alabama v. White*, 496 U.S. at 333, 110 S.Ct. at 2418 (Stevens, J. dissenting). In the law enforcement context, there is the danger that "an officer prompted not by a tip at all, but only by a hunch, could relay a description and license number through the dispatcher and thereby effectuate a lawful stop." *Mix v. State*, 893 P.2d 1270, 1272–73 (Alaska App.1995).

In the instant case, any traveler on the highway that morning could have "predicted" the facts contained in the REDDI tip. The tip did not provide a description of the driver, the passengers, or any of their future activities. As such, the tip did not provide any "inside information" that would indicate that the tip was reliable. Even *Alabama v. White* was referred to as a "close case" on its facts. 496 U.S. at 332, 110 S.Ct. at 2417. The facts of this case are far less compelling. Under these circumstances, we hold that the anonymous REDDI report was not sufficient to create a reasonable suspicion to justify an investigatory stop.

Officer Will properly investigated the REDDI report when he followed McChesney as he exited the interstate, made several turns, and traveled a substantial distance. Officer Will did not observe any erratic or illegal driving. He merely observed the pas-sengers looking back at him and the driver looking into his mirrors. Although we have adopted the doctrine that "even conduct which is wholly lawful and seemingly innocent may form the basis for a reasonable suspicion that criminal activity is afoot," *State v. Welch*, 873 P.2d 601, 604 (Wyo.1994), we conclude that this conduct did not provide a reasonable suspicion in this case. First, we dismiss the driver's glances in his mirrors as inconsequential; such action is undeniably the sign of a safe driver. Likewise, the glances of the passengers are not sufficient to provide a reasonable suspicion. The district court did not find these glances particularly significant, nor do we. *See State v. Kupihea*, 59 Haw. 386, 581 P.2d 765, 766 (1978) (two passengers in vehicle looked back in direction of police and crouched down, not grounds for stop); *Thomas v. State*, 297 So.2d 850, 852 (Fla.App.1974); *Parker v. State*, 363 So.2d 383, 386 (Fla.App.1978); *Rodriguez v. State*, 578 S.W.2d 419 (Tex. Crim.App.1979). Under these circumstances, we hold that the officer's observations did not provide a reasonable suspicion for an investigatory stop.

Finally, our decision to require independent police corroboration of an anonymous REDDI report appears to be consistent with the practice of law enforcement in this state, which will not make a stop unless police observation confirms either the reported or some other illegal or suspicious activity. On this point, the district court made the following observations in rendering its decision:

> [APPELLANT'S COUNSEL:] The next consideration that the courts need to make is given that the basis for this investigation was an anonymous tip or anonymous information, is that an adequate basis for the officer to make the inquiry?

> THE COURT: Apparently the highway patrol doesn't think so, because all of their information on REDDI stops is that ***nobody has to identify themselves and that the police will establish probable cause based upon their own observations not relying on the REDDI test***, is what the highway patrol and other law enforcement officers advertise about the REDDI stops.

(Emphasis supplied.) The district court's observation is confirmed by Officer Will's testimony that he intended to verify the anonymous tip by "follow[ing] the vehicle to see if any violations did, in fact, occur." [3]

### CONCLUSION

▉▉▉▉ As Wyoming law enforcement has recognized, anonymous REDDI tips, such as this one, by themselves, are not sufficiently reliable to warrant an investigatory stop. Without independent observation of suspicious or illegal activity, Officer Will did not have a reasonable suspicion to stop McChesney. The seizure of McChesney was illegal. This illegal seizure "bar[s] from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." *Wilson v. State*, 874 P.2d at 225 (quoting *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)). The decision of the district court to deny suppression is reversed. Upon remand, McChesney "shall be allowed to withdraw" his plea of guilty. W.R.Cr.P. 11(a)(2).

THOMAS, Justice, dissenting, with which KALOKATHIS, District Judge, joins.

I would affirm McChesney's conviction in this case. Is it merely an accident of alliteration that the word "Life" precedes the word "Liberty" in the Declaration of Independence,[1] or did the signatories of that historic document intend to prioritize life over liberty interests? The correct answer is that the order was intentional, and the lives of our Wyoming citizens surely weigh more on the scales of justice than the relative inconvenience of an investigatory stop of a motorist.

An appropriate refutation of the majority opinion in this case is set forth in a decision of the Court of Appeals of Oregon, where that court said:

The officer may corroborate the tip either by observing the illegal activity **or** by finding the person, the vehicle and the location substantially as described by the informant.

*State v. Bybee*, 131 Or.App. 492, 884 P.2d 906, 908 (1994) (emphasis added). In this case, the Gillette police officer quite clearly found the person, the vehicle, and the location substantially as described by the informant. When the informant describes behavior that involves violation of the state statutes, a prediction of future behavior is superfluous.

We have applied the principles of *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), in *Goettl v. State*, 842 P.2d 549, 554–55 (Wyo.1992), in which we said:

In prior cases, this court has recognized the validity of a "Terry stop" and also has adopted the "totality of the circumstances" test. *See Keehn v. Town of Torrington*, 834 P.2d 112 (Wyo.1992). In *Lopez v. State*, 643 P.2d 682 (Wyo.1982), a police officer's independent observations of an automobile and a suspect driving the car which matched descriptions by eyewitnesses were held to be adequate probable cause for an investigatory stop. In *Cook v. State*, 631 P.2d 5 (Wyo.1981), the circumstances that occurred following a robbery, together with reasonable inferences made by an experienced police officer, furnished adequate grounds for an investigatory stop. In *Parkhurst v. State*, 628 P.2d 1369 (Wyo.1981), *cert. denied*, 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981), the police officers were given a description of a car used by two individuals to flee from the scene of the murder, and they also were told the direction the car was traveling. The court held the officers were justified

---

**3.** In a recent issue of *Destinations*, the official publication of the Wyoming Department of Transportation, it was written: "As soon as a REDDI report is made, the law officer in the best position to respond does. Officers in the vicinity are radioed with an advisory that includes a description of the vehicle and driver. If and when the vehicle is located, the officer involved observes long enough to decide if there is probable cause to believe the driver is 'driving under

the influence.' If there is, a stop is made." *REDDI still ridding roads of drunk drivers*, DESTI-NATIONS, Vol. 5, Issue No. 1, Summer 1998, at 9.

**1.** "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain inalienable Rights, that among these are Life, Liberty, and the pursuit of Happiness." *Declaration of Independence—1776.*

in making an investigatory stop when a car fitting that description was spotted. In the course of developing our state precedent, we consistently have held that something less than probable cause will suffice for an investigatory or "Terry stop." *Simmons v. State*, 712 P.2d 887 (Wyo.1986); *Olson v. State*, 698 P.2d 107 (Wyo.1985); *Lopez; Cook.* "A policeman is not required to simply shrug his shoulders and allow a crime to occur merely because he lacks the necessary information required for probable cause to arrest. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). He may make an investigatory stop." *Olson*, 698 P.2d at 109–10.

Examining the "totality of the circumstances" as disclosed by the record in this case, in the light of the decision in *White*, 496 U.S. 325, 110 S.Ct. 2412, we conclude that sufficient probable cause was present to justify the investigatory stop of Goettl's car. We hold that the informant's tip, particularly the prediction of future events, the details of which were verified by the observation of the law enforcement officers, furnished more than adequate probable cause to stop the Goettl vehicle. The subsequent events, including the consensual searches, then justified the arrest of Goettl and the others in the vehicle.

More recently we have summarized our approach to investigatory stops in this way:

We have consistently held that something less than probable cause will suffice to justify an investigatory stop. *Goettl v. State*, 842 P.2d 549, 554 (Wyo.1992). We will not require a police officer to " 'simply shrug his shoulders and allow a crime to occur merely because he lacks the necessary information required for probable cause to arrest.' " 842 P.2d at 555 (quoting *Olson v. State*, 698 P.2d 107, 109–10 (Wyo.1985)). An investigatory stop "requires only the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime." *Wilson v. State*, 874 P.2d 215, 220 (Wyo.1994). The validity of such a stop depends on whether, in light of the totality of the circumstances, an officer possessed sufficient information to create such a reasonable suspicion. *Goettl*, 842 P.2d at 554; *see also Cook v. State*, 631 P.2d 5, 8 (Wyo.1981). In applying the totality of the circumstances test to situations involving a confidential informant's tip, we consider: "(1) the sufficiency of the information set forth in the informant's tip; (2) the prediction of future activity or events by the informant; and (3) some corroboration of the current and predicted future events by the police officers." *Goettl*, 842 P.2d at 554.

*Frederick v. State*, 981 P.2d 494, 497 (Wyo. 1999). Given the totality of the circumstances in this case, which included the description of the vehicle driven by McChesney; the location and direction of travel; the discovery by the officer of a vehicle matching that description; the arrival of that vehicle within a predictable time frame; and the clear statement of aberrant driving that could be perceived as reckless, the officer had sufficient reasonable suspicion to accomplish an investigatory stop.

It is right to consider the policy factors that are involved in an issue such as this. Those factors were captured plainly by the Kansas Court of Appeals in *State v. Tucker*, 19 Kan.App.2d 920, 878 P.2d 855, 858 (1994), when the court said:

This case involves the ever-changing equation used to balance the rights of an individual to be free from unwarranted intrusions of his or her freedom of movement and right to privacy with the right of the public to be protected from unreasonable danger. This equation and the balance change with the facts presented. It is clear that, when the focus of the stop or search is a mobile automobile, the requirements to justify a stop or search or arrest are lessened.

That court also said:

We must apply that balancing test in the instant case. A motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible. An investigatory or safety stop of a suspected drunken driver is a minimal intrusion upon

that driver's freedom of movement and privacy.

*Id.* at 861.

A telling analogy can be drawn to the decisions of several jurisdictions that have justified brief investigatory stops in cases involving anonymous tips of suspects carrying deadly weapons. *United States v. Clipper,* 973 F.2d 944, 951 (D.C.Cir.1992), *cert. denied,* 506 U.S. 1070, 113 S.Ct. 1025, 122 L.Ed.2d 171 (1993) (police may take into account "hazards that the illegal use of firearms presents to officer and citizens alike."); *United States v. Bold,* 19 F.3d 99, 104 (2nd Cir.1994), *cert. denied,* 517 U.S. 1250, 116 S.Ct. 2511, 135 L.Ed.2d 200 (1996) (information from anonymous informant sufficient for stop of person suspected of gun possession even though corroboration is of present rather than future events); *United States v. De-Berry,* 76 F.3d 884, 886 (7th Cir.1996) ("[a]rmed persons are so dangerous to the peace of the community that the police should not be forbidden to follow up a tip that a person is armed, and as a realistic matter this will require a stop in all cases."). *See generally,* 4 Wayne R. LaFave, *Search and Seizure* § 9.4(h) (3rd ed. 1996). An automobile in the hands of a drunk or otherwise irresponsible driver is as lethal as a firearm, and, indeed, deserves the same attention from officers.

We previously have made a distinction between a citizen informant and a police informant, and have suggested that courts ordinarily deem citizen informants to be presumptively reliable sources of information. *Borgwardt v. State,* 946 P.2d 805, 807 (Wyo. 1997). An anonymous tip does not permit verification of the honesty or reliability of the citizen informant. In the instance of a telephone call, however, the disclosure of the identity of the caller does not add substantially to the honesty or reliability of the information because the officer must react before there is any opportunity to verify the identity, honesty, or reliability of the citizen informant. If the caller is involved in a prank or a vendetta, a false name could be given, and the law enforcement personnel would have no way of determining the validity of the identity within the response time. I understand that there are occasions in which law enforcement officers may act improperly, but I have difficulty in making an assumption, not warranted on this record, that they will submit false reports to justify investigatory stops. What the officer did in this instance was corroborate by observation the caller's description of the car, a red Mercury with temporary plates; a particular location, eastbound on I-90 traveling towards Gillette; and its arrival within the time frame consistent with the location of the subject vehicle when the call was made. Reliability based upon identification of the informant who offers the information is not an exclusive determinant with respect to the question of reasonable suspicion. The content of the tip is a critical factor, and the level of danger that the tip alludes to is particularly important. *State v. Pulley,* 863 S.W.2d 29, 32 (Tenn.1993).

In *Kaysville City v. Mulcahy,* 943 P.2d 231 (Utah App.), *cert. denied,* 953 P.2d 449 (Utah 1997), the Court of Appeals of Utah was confronted with a case very similar to this case. The citizen informant had given a name to the dispatcher in *Kaysville City,* but the opinion does not say that the name of the informant was passed on from the dispatcher to the officer. The Utah Court of Appeals offered a very incisive analysis of such cases, but perhaps the most persuasive aspect of this opinion is this language:

> [W]e supplement and clarify our analysis with pertinent principles from the numerous other states addressing facts more on point with those of this case-the overwhelming majority of which have upheld the stops involved in those cases as supported by reasonable suspicion.

*Id.* at 235.[2] Several of the cases relied upon by the Utah Court of Appeals involved anonymous reports.

**2.** The cases cited in support of the telling statement by the Court of Appeals of Utah are:

See, e.g., *Goodlataw v. State,* 847 P.2d 589, 590–91 (Alaska Ct.App.1993); *State v. Robles,* 171 Ariz. 441, 831 P.2d 440, 441–43 (Ct.App. 1992); *People v. Willard,* 183 Cal.App.3d Supp. 5, 228 Cal.Rptr. 895, 896–97 (Super.Ct.1986); *Peterson v. Tipton,* 833 P.2d 830, 831–32 (Colo. Ct.App.1992); *State v. Evans,* 692 So.2d 216, 218–19 (Fla.Dist.Ct.App.1997); *State v. Butler,*

Circumstances such as those found in this case demand that the danger to the public if the driver is left alone be weighed against the interest of the individual in personal liberty. Certainly the individual is concerned, and justifiably, with an "intrusion upon cherished personal security * * *." *Terry v. Ohio*, 392 U.S. 1, 25, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968). The duty of the officer is to concern himself with protection of the public from the hazards associated with intoxicated drivers. The dangers that are associated with driving while intoxicated are well documented by the number of deaths that occur on our highways and the social concern over innocent lives that are lost each year. These factors clearly impact the State of Wyoming.

One method of analyzing reasonableness is to consider what action would be responsible under the circumstances. Any responsible parent, given the same information as this officer was given about the driving of a teenager, albeit the information was furnished anonymously, would sit down with the youngster for a discussion. That would be a responsible response by the parent. Like that parent, the officer in this case had " 'specific and articulable facts and rational inferences which [gave] rise to a reasonable suspicion that [McChesney] ha[d] committed or may [have been] committing a crime,' " based upon a totality of the circumstances. *Frederick*, 981 P.2d at 497 (*quoting Wilson v. State*,

874 P.2d 215, 220 (Wyo.1994)). That reasonable suspicion justified the relatively minor inconvenience suffered by McChesney in the investigatory stop, even assuming he had done nothing wrong. Clearly, the events that followed the investigatory stop furnished ample probable cause for his arrest. Effective enforcement of our laws prohibiting driving while intoxicated requires immediate response to any potential threats to the public safety.

After balancing the competing interests, I would hold that neither the Fourth Amendment to the Constitution of the United States nor the provisions of Wyo. Const. art. 1, § 4 is offended by an investigatory stop based on an anonymous report that included observations of a vehicle, its identifying characteristics, its occupants, its location and aberrant driving behavior. If the circumstances involve a threat to the lives or safety of others that is posed by someone who may be driving while intoxicated or impaired, the responsible officer must pursue an investigation. I would affirm McChesney's conviction in this case.

224 Ga.App. 397, 480 S.E.2d 387, 388–89 (1997); *State v. Smith*, 638 N.E.2d 1353, 1355–56 (Ind.Ct.App.1994); *State v. Markus*, 478 N.W.2d 405, 408–09 (Iowa Ct.App.1991); *State v. Tucker*, 19 Kan.App.2d 920, 878 P.2d 855, 862–64 (1994); *State v. Sampson*, 669 A.2d 1326, 1328 (Me.1996); *Playle v. Commissioner of Pub. Safety*, 439 N.W.2d 747, 748–49 (Minn. Ct.App.1989); *State v. Melanson*, 140 N.H. 199, 665 A.2d 338, 340–41 (1995); *State ex rel. Taxation & Revenue Dep't v. Van Ruiten*, 107 N.M. 536, 760 P.2d 1302, 1304–05 (Ct.App.

1988); *People v. Rance*, 227 A.D.2d 936, 644 N.Y.S.2d 447, 447 (1996); *State v. Bryl*, 477 N.W.2d 814, 817 (N.D.1991); *Rittman v. State*, 875 P.2d 439, 441 (Okla.Ct.App.1994); *State v. Perrin*, 143 Or.App. 123, 923 P.2d 1249, 1251 (1996); *State v. Lownes*, 499 N.W.2d 896, 900 (S.D.1993); *State v. Sailo*, 910 S.W.2d 184, 188–89 (Tex.App.1995). *But see Campbell v. State*, 31 Wash.App. 833, 644 P.2d 1219, 1220–21 (1982).

*Kaysville City*, 943 P.2d at 235.