# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 9

### OCTOBER TERM, A.D. 2016

**February 1, 2017**

MICHAEL SCOTT TIBBETTS,

Appellant
(Defendant),

v.

S-16-0134

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
The Honorable Thomas W. Rumpke, Judge

*Representing Appellant:*

Nicholas H. Carter and Derek A. Thrall of the Nick Carter Law Firm, P.C., Gillette, Wyoming. Argument by Mr. Thrall.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne Martens, Senior Assistant Attorney General; Joshua C. Eames, Assistant Attorney General. Argument by Mr. Eames.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ,** Justice.

[¶1] The Appellant, Michael Scott Tibbetts, appeals his conviction for possession of methamphetamine with the intent to distribute. Mr. Tibbetts' appeal comes after he entered a conditional no contest plea to the charge, reserving the right to challenge the district court's order denying his motion to suppress. We affirm.

## ISSUE

[¶2] Mr. Tibbetts raises one issue in this appeal:

> Did the district court err in its finding of fact that [Mr. Tibbetts] consented to continued detention when law enforcement told him "he was free to leave" and law enforcement continued to have [its] red and blue emergency overhead lights activated?

## FACTS

[¶3] On May 3, 2013, Wyoming Highway Patrol dispatch advised Trooper Jon Briggs that a newer model black Chevrolet pickup with lifted large tires was traveling through Wyoming to North Dakota and was possibly involved in a narcotics transaction. At approximately 4:15 p.m., Trooper Briggs observed a black Chevrolet pickup truck traveling in excess of the posted speed limit on Highway 59 north of Gillette, Wyoming. Trooper Briggs testified he believed the truck was traveling 80 miles per hour in a posted 65 mile per hour zone, and his radar showed the truck was traveling at 76 miles per hour. Trooper Briggs pulled the truck over and identified the driver as Mr. Tibbetts. Mr. Tibbetts' eye contact and body position indicated to Trooper Briggs that he was extremely nervous. Mr. Tibbetts provided Trooper Briggs with his driver's license and proof of insurance, Trooper Briggs verified the insurance card matched the truck, and he then returned to his patrol car to write a speeding citation.

[¶4] Trooper Briggs returned to the truck and gave Mr. Tibbetts the citation, his driver's license and insurance card, and told Mr. Tibbetts to "drive safe and have a safe day." Trooper Briggs turned to walk away from the truck, but once he reached the rear bumper, he turned around and asked Mr. Tibbetts if he would mind answering a few more questions. Mr. Tibbetts advised that he had no issues with answering further questions. Trooper Briggs asked Mr. Tibbetts about his travel plans and then asked if he had anything in the truck that he should not have. Mr. Tibbetts removed a plastic sandwich bag containing Lortab pills from the truck's console and stated he did not have a valid prescription for the pills. Mr. Tibbetts also disclosed that he was currently facing charges involving methamphetamine in Texas.

1

[¶5]   Trooper Briggs asked Mr. Tibbetts if he could search the truck and he agreed to the request.  However, before conducting the search, Trooper Briggs had Mr. Tibbetts perform various field sobriety maneuvers.  Once Trooper Briggs determined that Mr. Tibbetts was not under the influence of drugs or alcohol, he asked again if he could search the truck.  Mr. Tibbetts responded that he did not want his truck searched, and Trooper Briggs stated that he was going to detain Mr. Tibbetts until a drug detection dog arrived.   At that point in time, Mr. Tibbetts told Trooper Briggs there was methamphetamine on the floorboard behind the center console of the truck.  When Trooper Briggs looked in the described area, he found two glass pipes containing methamphetamine and a plastic bag also containing methamphetamine.  Trooper Briggs arrested Mr. Tibbetts and the State charged him with one count of possession with the intent to deliver methamphetamine.

[¶6]   Mr. Tibbetts filed a motion to suppress his statements and the methamphetamine on the basis that the search of the truck was the product of an unlawful detention that exceeded the scope of Trooper Briggs' original justification for the traffic stop.  Mr. Tibbetts argued the original detention never ended because Trooper Briggs did not tell Mr. Tibbetts he was "free to leave."  Following a hearing, the district court concluded that a reasonable person in Mr. Tibbetts' circumstances would have felt free to leave after Trooper Briggs wished him safe travels and, therefore, Mr. Tibbetts voluntarily consented to answering Trooper Briggs' additional questions.

[¶7]   Several months later, Mr. Tibbetts filed a motion requesting the district court reconsider its ruling on the motion to suppress.  Mr. Tibbetts based his motion on a newly published case by the United States Supreme Court, *Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015), wherein the Court held a traffic stop could not be prolonged without reasonable suspicion in order to conduct a canine sniff.  Mr. Tibbetts specifically argued that *Rodriguez* required Trooper Briggs to let him leave before engaging in any further contact.  The district court continued to conclude that Mr. Tibbetts consented to the further contact with Trooper Briggs and denied the motion.

[¶8]   Thereafter, Mr. Tibbetts entered a conditional no contest plea under W.R.Cr.P. 11(a)(2), reserving the right to appeal the district court's denial of his motion to suppress and the motion to reconsider the motion to suppress.  The district court sentenced Mr. Tibbetts to four to five years of imprisonment, but suspended that sentence in favor of five years of probation.  Mr. Tibbetts timely filed this appeal.

## STANDARD OF REVIEW

[¶9]   When reviewing the denial of a motion to suppress, this Court views "the evidence in the light most favorable to the district court's determination and defers to the district court's factual findings unless they are clearly erroneous."  *Jennings v. State*, 2016 WY

2

69, ¶ 8, 375 P.3d 788, 790 (Wyo. 2016).  We review the underlying question of law—whether the search was unreasonable and therefore unconstitutional—*de novo*.  *Id*.

## DISCUSSION

[¶10]  Mr. Tibbetts claims Trooper Briggs detained him without reasonable suspicion when he reinitiated contact after returning his driver's license, proof of insurance, and issuing him a speeding citation.  He argues that, because the detention was prolonged without reasonable suspicion, Trooper Briggs' discovery of the methamphetamine was the product of an unconstitutional search.  Although Mr. Tibbetts relied on additional facts at the suppression hearing, he now relies on only two facts in asserting that Trooper Briggs continued to detain him:  1) Trooper Briggs took only two to three steps away from the driver's window before returning to the truck and asking Mr. Tibbetts if he would be willing to answer further questions; and 2) the emergency overhead lights on Trooper Briggs' patrol car were still flashing.  Mr. Tibbetts argues that, under those circumstances, a reasonable person would not feel free to leave and the State cannot justify the further detention with reasonable suspicion of criminal activity.

[¶11]  Before we analyze the legality of the encounter, we are compelled to note that Mr. Tibbetts repeatedly faults the district court for not making findings regarding Trooper Briggs' use of the emergency overhead lights on his patrol car.  Mr. Tibbetts describes the overhead lights as a "crucial factor" in the motion to reconsider and was an "essential factor" to his argument.  Despite these assertions, the record is clear that the emergency lights were in no way a focus in Mr. Tibbetts' argument in the district court.  In fact, in the motion to reconsider and its accompanying argument, Mr. Tibbetts never even mentions the use of the overhead lights.  Instead, his focus in the district court was that Trooper Briggs did not tell him he was free to leave and did not give him the chance to leave before re-engaging contact; thus, the original detention never ended and was extended without reasonable suspicion of criminal activity.

[¶12]  While Mr. Tibbetts' challenge to the district court's order on the motion to suppress has been properly preserved, the assault on the district court's lack of findings regarding the overhead lights has not.  "'A conditional plea of guilty does not provide *carte blanche* permission for the appellant to present any and all arguments on appeal.'  An appellant may only raise arguments that were clearly presented to the district court."  *Miller v. State*, 2009 WY 125, ¶ 32, 217 P.3d 793, 803 (Wyo. 2009) (internal citations omitted).  For this reason, we refuse to consider Mr. Tibbetts' claim that the district court erroneously failed to make findings regarding Trooper Briggs' use of the overhead lights.

[¶13]  However, we must still consider whether Mr. Tibbetts was unlawfully detained by Trooper Briggs after he had completed the necessary investigation regarding the speeding violation.  There are three tiers of interaction between law enforcement officers and citizens:  consensual encounter, investigatory detention and arrest.  *Dimino v. State*, 2012

3

WY 131, ¶ 10, 286 P.3d 739, 742 (Wyo. 2012). Here, we must focus on the consensual encounter and investigative detention. A consensual encounter exists when a reasonable person would feel free "to disregard the police and go about his business." *California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 1552, 113 L. Ed. 2d 690 (1991); *see also Frazier v. State*, 2010 WY 107, ¶ 14, 236 P.3d 295, 299 (Wyo. 2010). Consensual encounters do not trigger Fourth Amendment scrutiny and no reasonable suspicion of criminal activity is required for the contact to occur. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2385, 115 L. Ed. 2d 389 (1991).

[¶14] The investigative detention, also called a *Terry* stop, is a seizure under the Fourth Amendment and requires that an officer have a reasonable suspicion that criminal activity has occurred before engaging in the contact. *Damato v. State*, 2003 WY 13, ¶ 9, 64 P.3d 700, 704-05 (Wyo. 2003). A traffic stop is an investigatory detention. *Dimino*, ¶ 10, 286 P.3d at 742.

> 'An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop. . . .' *O'Boyle* [*v. State*, 2005 WY 83,] ¶ 47, 117 P.3d [401], 414 [(Wyo. 2015)]. The officer may expand the investigative detention beyond the scope of the initial stop only if the citizen consents to the expanded detention or if 'there exists an objectively reasonable suspicion that criminal activity has occurred or is occurring.' *Id.*, ¶ 48, 117 P.3d at 414.

*Id.*

[¶15] Mr. Tibbetts does not dispute that Trooper Briggs had reasonable suspicion to initiate the traffic stop and conduct the investigation that led to the speeding citation. However, he argues Trooper Briggs unlawfully extended the detention without reasonable suspicion of criminal activity after the speeding investigation was completed. Despite his assertion, we agree with the district court's finding that the investigative detention ended when Trooper Briggs returned Mr. Tibbetts' driver's license and insurance card, gave the citation, and told Mr. Tibbetts to "drive safe and a safe day."[1] At that point in time, Mr. Tibbetts was free to leave.

[¶16] We also agree with the district court that Trooper Briggs' subsequent contact with Mr. Tibbetts was consensual in nature. As mentioned above, an encounter is consensual

---

[1] In the district court, Mr. Tibbetts argued that his original encounter with Trooper Briggs never ended because Trooper Briggs never informed him that he was "free to leave." (R., Vol. I, at 132) He appears to have abandoned that argument on appeal. However, the United States Supreme Court has stated that the Fourth Amendment does not require that a lawfully seized defendant be advised that he is "free to go" before his consent to search will be recognized as voluntary. *Ohio v. Robinette*, 519 U.S. 33, 39-40, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996).

if "a reasonable person would have felt free to decline the officers' requests or otherwise terminate the encounter." *Frazier*, ¶ 14, 236 P.3d at 299. When making this determination, "we consider the totality of the circumstances including how law enforcement phrased the request, whether the officer told the individual that he could refuse the request, and the presence of other coercive factors." *Id.* Trooper Briggs' dash-cam video shows that as Trooper Briggs began to walk away from Mr. Tibbetts' truck, Mr. Tibbetts prepared to drive away from the scene as evidenced by a change in the truck's taillights (indicating Mr. Tibbetts stepped on the brakes). Trooper Briggs was professional, courteous and polite when he asked Mr. Tibbetts if he would answer some further questions. Further, it is evident from the video that Mr. Tibbetts immediately and readily provided the bag of Lortab pills after only one question by Trooper Briggs.

[¶17] Mr. Tibbetts does not argue that Trooper Briggs engaged in any coercive behavior that would have elevated the subsequent questioning from a consensual encounter to a second investigatory detention. Instead, his focus is solely on the facts that Trooper Briggs did not wait until Mr. Tibbetts actually began to leave before initiating the subsequent contact and that the emergency overhead lights on Trooper Briggs' patrol car were on the entire time. However, Mr. Tibbetts has not provided any authority for the proposition that an investigatory detention continues until the individual actually begins to leave, even though the officer earlier indicated the detention had ended. This Court has not found any authority supporting such a proposition. Mr. Tibbetts' choice to not drive away does not obviate the fact that he was free to do so.

[¶18] The law does not support Mr. Tibbetts' assertion that he remained under detention simply because the overhead lights on the patrol car remained on. Mr. Tibbetts relies exclusively on *McChesney v. State*, 988 P.2d 1071 (Wyo. 1999) as the basis for his position. While *McChesney* recognizes that emergency lights are strongly indicative of a seizure, it is simply one factor that is viewed under the totality of the circumstances surrounding the contact. *Id.* at 1074-75. In *McChesney*, the officer was attempting to effectuate a traffic stop and not only turned on his overhead patrol lights, but also blocked McChesney's vehicle by parking directly behind it. *Id.* at 1075. All of these facts together demonstrated that McChesney had been seized. *Id.*

[¶19] In other circumstances, however, the use of overhead lights may not be as significant of a factor. In *Marinaro v. State*, 2007 WY 123, 163 P.3d 833 (Wyo. 2007), we considered a similar situation as we are faced with here. A trooper issued a warning ticket, returned Marinaro's driver's license and rental agreement, and told Marinaro to "have a safe trip." *Id.*, ¶ 4, 163 P.3d at 835. The trooper then re-approached Marinaro and asked if he would answer further questions, to which Marinaro answered in the affirmative. *Id.* Marinaro then consented to the trooper searching the car and the trooper found two boxes of marijuana. *Id.*, ¶ 5, 163 P.3d at 834. This Court concluded that the only "coercive factors" presented were the same coercive factors present in every traffic

5

stop: an armed and uniformed officer and flashing lights on the patrol car. *Id.*, ¶ 11, 163 P.3d at 836.

> If these factors were sufficient to invalidate the voluntariness of a consent, no consent would ever be voluntary. Neither can these factors, alone, be seen as proving that the person stopped did not feel that he was free to go. In the present case, for instance, the appellant knew that he was free to go because the trooper had told him he could go. His departure was not stopped by the uniform, gun, or flashing lights. It was stopped only by his consent to a non-demanding, relatively cordial request by the trooper to ask more questions. A reasonable person in the appellant's position at that time would have felt that he could have said "no" and proceeded on his way.

*Id.*, ¶ 11, 163 P.3d at 836.

[¶20] Additionally, other jurisdictions have specifically found that the overhead emergency lights are but one factor courts consider in the totality of the circumstances. *See Hudson v. State*, 247 S.W.3d 780, 785 (Tex. Crim. App. 785) ("Activation of overhead lights on a police vehicle does not necessarily make an encounter non-consensual"); *Commonwealth v. Johonoson*, 844 A.2d 556, 562 (Pa. Super. 2004) ("We recognize that flashing overhead lights, when used to pull a vehicle over, are a strong signal that a police officer is stopping a vehicle and that the driver is not free to terminate this encounter. The same is not necessarily true under the factual circumstances presented here."). In *State v. Roark*, 103 P.3d 481 (Idaho Ct. App. 2004), the Idaho Court of Appeals was faced with an argument very similar to the one made by Mr. Tibbetts. In *Roark,* an officer returned the defendant's driver's license and documents and told the defendant twice that he was free to leave. *Id*. at 484. The officer then asked if the defendant could answer some more questions. *Id*. On appeal, the defendant argued that the continued operation of the patrol car's emergency lights were indicative of a continued detention. The court disagreed:

> Although the activation of the emergency lights is a command for motorists to stop, [under Idaho law], the fact that the emergency lights had not yet been turned off did not constitute a continued show of authority detaining Roark in the face of at least two notifications from the officer that he was free to go.

*Id*. The court concluded:

6

It is not practical nor necessary that an officer turn off his emergency lights before he may effectively instruct an individual who has been stopped that he may leave. No reasonable person who has been unequivocally told that he may go, as Roark was, would believe that he should disregard the statement merely because the patrol car's overhead lights are still flashing.

*Id.*

[¶21]  Under the totality of the circumstances here, a reasonable person in Mr. Tibbetts' position would have felt free to decline Trooper Briggs' request. Trooper Briggs had returned Mr. Tibbetts' driver's license and documents, had issued the citation, told him to "drive safe and have a safe day," and walked away. Although the overhead lights of the patrol car were still on, Trooper Briggs had completed his investigation and had indicated Mr. Tibbetts was free to leave. Trooper Briggs was not coercive in any fashion when he asked Mr. Tibbetts if he would answer some further questions. Therefore, at that point in time, the contact between Trooper Briggs and Mr. Tibbetts was consensual. The district court properly denied Mr. Tibbetts' motion to suppress.

[¶22]  Affirmed.